## DES MOINES MANUFACTURING & SUPPLY CO. v. TILFORD MILLING CO. *et al.*

1. The corporate powers of a corporation being vested in its board of directors by the statute (Comp. Laws, § 2926), its officers have no power to bind it by contracts not authorized by the directors.

2. The purchaser of property from a corporation has the right to defend against a mechanic's lien claimed thereon by showing that the contract upon which the right to a lien is based was not made by nor legally binding on, the corporation.

3. One contracting with the officers of a corporation, acting in its name, is chargeable with notice of the limit of their powers and authority to bind the corporation.

(Opinion filed April 6, 1897.)

Appeal from circuit court, Meade county.   Hon. A. J. PLOWMAN, Judge.

Action to foreclose a mechanic's lien.   From a judgment for defendants, plaintiff appeals.   Affirmed.

The facts are stated in the opinion.

*W. W. Wood* and *Ralph H. Kirk,* for appellant.

A corporation cannot avoid its obligation when, for instance, it has borrowed money and used it, on the ground that its officer who negotiated the loan was not properly authorized in the premises.   Bank v. Fiske, 60 N. H. 363; Wright v. Pipe Lum. Co., 101 Pa. St. 204; Tyler v. Tualatin, 14 Or. 485; Schurr v. Invest. Co., 18 N. Y. Supp. 454.   No mere stranger can be heard to deny the liability of a corporation for the value of property furnished to it, because the contract was *ultra vires* or without authority when the corporation retains the property and remains silent.   Wood v. Corry Water Co., 44 Fed. 146; Railroad v. Railroad, 20 Atl. 383.

The appellant had a right to deal with the president and secretary of the Milling Company, as managing officers thereof.   Officers placed in open charge of its affairs by a corporation have the power to bind it as to third parties by their con-

tracts made in the usual course of business.   The burden was
not upon appellant to show the authority.   Thompson Corp. §
4850; Whittaker v. Kilroy, 38 N. W. 606; Ins. Co. v. Bowman,
84 Ky. 430; Topeka Prin. Ass'n v. Martin, 39 Kan. 750; Getty
v. Barnes Milling Co., 40 Kan. 281.   In the absence of proof of
express limitation upon their authority managing officers have
the implied power to contract for labor and materials and
bind the corporation therefor.   Thompson Corp. §§ 4627, 4854;
Seeley v. Mill Co., 59 Cal. 22; Cuder v. Lumber Co., 49 N. W.
575.

   *Charles W. Brown*, for respondents.

   Neither the president nor the secretary of a corporation
has any implied authority by virtue of his office to act as its
agent.   4 Thompson Corp. §§ 4619, 4622, 4697; Wait v. Nashua
Armory Ass'n, 23 Atl. 77; Lyndon Mill Co. v. Lynden Institu-
tion, 63 Vt. 581; Turnpike Road Co. v. Loomy, 1 Met. 550;
Bank v. Farmers L. & T. Co., 14 Wis. 326; Bliss v. Kaweah, 65
Cal. 502; Mahone v. Railroad, 111 Mass. 74; Murray v. Nelson
Lumber Co., 143 Mass. 250; Templin v. Railroad, 35 N. W. 634;
Griffith v. Railroad, 36 N. W. 901.

   The unauthorized acts of the president and secretary were
never ratified by the corporation.   There could be no such rat-
ification without full knowledge on the part of the board of di-
rectors.   4 Thompson Corp. §§ 5306 *et seq*; Lyndon Mill Co. v.
Lyndon Inst. 63 Vt. 581; Pennsylvania, etc., Co. v. Dandridge,
29 Am. Dec. 543.

   Appellant's contention that under the evidence the execu-
tive board was by the by-laws vested with the general manage-
ment of the company's affairs, and that therefore the president
and secretary constituting a majority of the board had the
power to bind the company cannot be sustained.   An agency
conferred on two or more persons, whether in terms joint or
not, is in the absence of words or circumstances showing the
contrary, a joint agency; and it can be exercised only by all
combining, not by one or any number less than all.   Bishop,

Cont., § 1088; Copeland v. Ins. Co., 6 Pick. 198; First Parish v. Cole, 3 Pick. 232; Kupfer v. South Parish, 12 Mass. 185; Wilder v. Ramsey, 95 N. Y. 7; Brennan v. Wilson, 71 N. Y. 502; Green v. Miller, 6 Johns. 39; Rollins v. Phelps, 5 Minn. 463; Low v. Perkins, 10 Vt. 532; McCarter v. Bates, 29 O. St. 419.

Corson, P. J. This is an action to foreclose a mechanic's lien. Morie H. Davis, executrix of the estate of Frank R. Davis, deceased, was the only defendant who filed an answer or defended the action. She claimed title to the property on which the lien was sought to be foreclosed under and by virtue of a sale of the same upon a mortgage given by the Tilford Milling Company to Frank R. Davis in his lifetime. The findings and judgment were in favor of the defendant Morie H. Davis, and the plaintiff appeals.

The evidence tended to prove that on January 2, 1889, Davis L. Chantry, Geo. B. McPherson, S. B. Miller, and John D. Hale met at the house of the latter, near the town of Tilford, in Meade county and that Chantry and McPherson proposed to furnish the machinery, complete, and put the same in running order, for a 50-barrel roller flouring mill, for the sum of $6,000 in stock of a company organized with a capital stock of $12,000. Hale and Miller assented to this proposition, and agreed to furnish a site and erect a mill building at the town of Tilford. Articles of incorporation were thereupon signed and acknowledged, in which Chantry, McPherson, Miller, Hale, and Freeman Knowles were named as directors. And the board proceeded to elect Chantry acting president, Hale acting treasurer and Miller acting secretary. No regular organization seems to have been effected until June. Under this agreement, Chantry and McPherson moved from Iowa the machinery of a 50-barrel roller flouring mill, and proceeded to place it in a building erected for that purpose by Hale and Miller at the town of Tilford. On June 18th a meeting of the stockholders was held, an

organization of the corporation was effected, and by-laws were adopted. The same directors were continued in office until the regular annual meeting in August, and the board continued the same officers until that time. Between March 15th and September 15th, Chantry and Miller ordered machinery of the plaintiff to the value of about $700 for the said mill, and all the orders except one were made in the name of the Tilford Milling Company, either by Chantry, as president, or Miller, as secretary. Nearly all the orders were signed "Tilford Milling Company, per D. L. Chantry." One appears to have been signed by Chantry in his individual name, and one was signed "Tilford Milling Co., per S. B. Miller, secretary." There was also a statement of the account of George Monlux "for work done for Tilford Milling Co.," signed in the name of that company by S. B. Miller, secretary. No authority was shown from the board of directors to make these orders in the name of the defendant corporation. The respondent Morie H. Davis claims and insists that neither Chantry nor Miller had authority to make the orders in the name of the corporation, and that the corporation was not bound by their acts. She further contends that the plaintiff is presumed to have had knowledge of Chantry's and Miller's want of authority to make the order for the corporation defendant. The learned circuit court evidently took this view, and found as follows: "That said materials were not furnished, nor was said labor performed under or by virtue of any contract made by the said defendant the said Tilford Milling Company to or with the said plaintiff; and no contract was ever made between the said Tilford Milling Company and the said plaintiff for the furnishing of the said materials, or the performance of the said labor or any part thereof." The principal question presented is, was there a preponderance of evidence against this finding of the court? The evidence is undisputed that Chantry and McPherson agreed to furnish all the machinery necessary and to put in running order a roller mill, for $6,000 in the capital stock of a

company to be incorporated for that purpose. They commenced the performance of that contract, and completed it. But during the time they were performing the contract, they apparently found it necessary to have additional machinery in order to complete the same. Without consulting the board of directors, Chantry ordered this machinery from the plaintiff in the name of the "Tilford Milling Co." Miller made one similar order as secretary, and Chantry made one order in his individual name. There was no evidence that the board of directors had ever, in terms, authorized either Chantry or Miller to order this machinery for the company. But it is contended that, as president and secretary, they had the implied authority to make the orders, and, if they had not, the directors had ratified their acts. First, then, what powers are conferred upon the president and secretary of a corporation? The corporate powers of a corporation are vested in a board of directors. Sec. 2926, Comp. Laws, provides as follows: "The corporate powers, business and property of all corporations formed under this chapter must be exercised, conducted and . controlled by a board of not less than three nor more than eleven directors; to be elected from among holders of stock; or where there is no capital stock, then from the members of such corporation." By the next section the duty to elect officers is imposed, and their powers defined. That section reads as follows: Immediately after their election, the directors must organize by the election of a president; who must be one of their number, a secretary and treasurer. They must perform the duties enjoined on them by law and the by-laws of the corporation. A majority of the directors is a sufficient number to form a board for the transaction of business, and every decision of a majority of the directors forming such board, made when duly assembled, is valid as a corporate act." It will thus be seen that the corporate powers can only be exercised by the board of directors, and such seems to be the general rule. Murray v. Lumber Co., 143 Mass. 250, 9 N. E. 634; 4 Thomp.

Corp. §§ 4619, 4622, 4697; Lyndon Mill Co. v. Lyndon Literary & Biblical Inst. (Vt.) 22 Alt. 575.

It is further contended that by the by-laws an executive board was created, and vested with the general management of the business of the corporation; but the powers conferred upon this board do not seem to be broad or comprehensive enough to have authorized the president or secretary to give the orders in question. Article 4 of the by-laws reads as follows: "The executive board shall have the general management of the business and affairs of the company. They shall sign all contracts and acceptances, checks, and other instruments in the conduct of the business, and reply to the company's correspondence in all matters not necessary to be submitted to the board of directors; keep all business accounts; prepare all statements and annual reports; and the president and secretary and treasurer shall constitute the executive board." But, assuming that the executive board could have authorized the president to make the order, it is not shown that it did act as a board, or attempt to confer any such authority upon the president or secretary. But, on the contrary, Mr. Male, who was a member of that board—being the treasurer—shows clearly that no action by such executive board was taken. The evidence was insufficient to prove a ratification. Mr. Hale, one of the directors, and the treasurer, says: "As an officer of the Tilford Milling Company, I did not know or participate in the transactions of ordering the machinery and different articles that were purchased of the plaintiff. * * * This machinery, I suppose, came from Iowa as a mill already built. It was not supposed to come from Des Moines. It was a mill moved from Iowa here and re-set up. It was not furnished by the Des Moines Manufacturing & Supply Company. All the machinery for the Tilford Milling Company was furnished by Mr. Chantry. The Tilford Milling Company purchased it of Mr. Chantry and paid him for it. By what I stated I mean that the Tilford Milling Company had no transaction whatever with the plaintiff in this

case." He further testified: "We [the directors] had no knowledge of any machinery being bought in the name of the Tilford Milling Company, as we had an agreement—I and Miller on one side, and George B. McPherson and Chantry on the other side. It is in the book over there, and he was to furnish the machinery, put up a first class mill, and we were to put up the building. That is, Chantry was to furnish the machinery. * * * There was no other transaction with Chantry with reference to the purchase of the machinery for the Tilford Milling Company than what appears from the corporate records already referred to. Mr. Knowles, Mr. Miller, and myself never authorized the purchase of any machinery or supplies of the plaintiff, or consented to the same in any way, to my knowledge. * * * I knew what was going on. I was there frequently. * * * I knew that we were putting in this machinery, but not on the expense of the Tilford Milling Company. I did not know that the Des Moines Manufacturing Company and Monlux, their man, were putting in the machinery for the company. He was putting in the machinery for Mr. Chantry. We paid him for that purpose. I lived at home, close there, and was there when it was being put in. That was the contract —that he was to put it in—that we had with him. * * * I notified the Des Moines Manufacturing & Supply Company that they should have to look to Chantry for this. * * * We paid this man Chantry, and Chantry would not pay for this machinery. Then they wrote to me in regard to the matter, and I wrote them the straight of it." The evidence of Nehring, another director, was substantially the same. The evidence of Mr. Chantry upon this subject is vague and unsatisfactory. He does not claim that the board of directors, as such, authorized him to make the order in the name of the company; but his evidence leaves the impression that he believed the other directors knew he was sending the orders, and that such knowledge was sufficient authority for his action, when no objection was made by the other directors. There were some proceed-

ings on the part of the board of directors which would seem to be inconsistent with the theory that such directors, outside of Chantry and Miller, had no knowledge that the orders for the machinery were being made in the name of the milling company. The plaintiff, it seems, sent a machinist by the name of George Monlux to superintend the placing of the machinery in the mill, and the value of his services is included in the items for which a lien is claimed. At a meeting of the directors on October 3d, a board bill of Monlux was allowed for $39.28. The allowance of this board bill was not explained in the evidence given at the trial. While this act of the directors seems inconsistent with the defendants' theory, it is not of itself sufficient to render the defendant's liable. It was doubltess considered by the trial court. Such a bill, with others, might have passed through without attracting the attention of the directors.

It is further insisted by the appellant that the corporation having held Chantry out as its president and Miller as its secretary, clothed with the apparent authority to manage its business, and is not now questioning their authority, third parties who have succeeded to its interest in its property ought not to be permitted to .question their authority. The corporation, it is true, is not defending this action; but Morie H. Davis, as executrix, has succeeded to all the interests of the corporation in the property, and has the right to protect her interest by showing that the plaintiff has never acquired any valid lien upon the property, which it never did, unless the machinery and labor were furnished to the corporation under a contract that the parties making it had the legal right to make in order to bind the corporation.

It is further contended that as the plaintiff acted in good faith, under the belief that Chantry and Miller were fully authorized to order the machinery, it should be protected. But the rule is too well settled to now be disturbed that parties contracting with officers of a corporation must ascertain the scope

of their powers and authority, and that the corporation will only be bound when such officers have acted within the scope of their authority. After a careful examination of the evidence, we are unable to say that there is a preponderance of evidence against the findings of the court, or that they are not fully sustained by the evidence. The judgment of the circuit court and the order denying a new trial are affirmed.