McElroy and another vs. Minnesota Percheron Horse Co.

McELROY and another, Appellants, vs. MINNESOTA PERCHERON HORSE COMPANY, Respondent.

*May 4 — May 21, 1897.*

*Corporations:* Ultra vires: *Defense, when not available: Authority of president to make contract: Estoppel.*

1. Where one of the purposes of a corporation, as specified in its articles of organization, was to deal in real estate in town and country, a contract to pay real-estate agents for effecting an exchange of the corporate property (Minnesota land) for Chicago real estate was not *ultra vires*.

2. A corporation cannot invoke the doctrine of *ultra vires* to prevent a recovery on a contract which has been fully performed by the other party thereto.

McElroy and another vs. Minnesota Percheron Horse Co.

3. In an action against a corporation upon a contract to pay agents for effecting an exchange of real estate, executed in the name of the corporation by its president, want of authority on the part of the latter to make the contract was set up as a defense. It appeared that practically all the stock was owned by the president, a few shares being nominally held by relatives and employees, who made up the board of directors, for the purpose of keeping up the corporate organization; that for five years the affairs of the corporation had been conducted by the then president or his predecessor without any objections or proceedings whatever by the stockholders or directors, so far as appeared from the records; that during such time no meeting of either body had been held except one for filling vacancies in the board of directors; and that for over two years negotiations had been pending with the plaintiffs concerning the subject matter of the contract, which had been conducted by the president as substantially the only person interested. *Held,* that the corporation was estopped to deny the president's authority.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Defendant corporation was organized under the laws of the state of Minnesota, among other things, for the purpose of buying, selling, and dealing in real estate. Its principal place of business, by the articles of organization, was located in the town of Troy, Pipestone county, Minnesota. The business was actually transacted, mostly, at the residence of the president in Milwaukee or Oshkosh, Wisconsin. The principal property of the corporation on the 23d day of November, 1893, was a farm, and some live stock and other personal property thereon, in Pipestone county, Minnesota. On the date mentioned, George M. Paine, the president of the company, visited plaintiffs, who were real-estate agents in the city of Chicago, and entered into a written agreement with such agents to the effect that the corporation would pay such agents $3,750 to effect a trade whereby the Pipestone farm property could be exchanged for some Chicago real estate, particularly described in the contract, and upon

terms therein specified. Plaintiffs thereafter obtained a binding agreement on the part of the owners of the Chicago property to make such exchange, and notified the defendant thereof. It refused to carry out the contract or to pay plaintiffs, and thereupon they sued for their commission. The complaint set forth a good cause of action for such commission. Defendants answered, among other things, that George M. Paine, the president of the corporation, had no authority to make the contract with plaintiffs, and that such contract was not binding upon the defendant. The evidence established plaintiffs' right to recover unless defeated under that part of the answer particularly referred to.

The evidence showed that George M. Paine owned 994 shares of the stock of the corporation, or all of the stock except six shares, which were owned by other persons principally for the purpose of having a sufficient number of officers to fill the offices and keep up the corporate organization; that Paine was substantially the only person pecuniarily interested; that he had principally transacted its business for a long time and without objection on the part of the persons holding the six shares; that in the making of contracts it had not been customary to authorize them by action of the board of directors, but for Paine to conduct the business without previous special authority; that the farming business had been conducted at a loss for some time, and that it was desired to dispose of that property; that to that end the contract of employment made with plaintiffs was entered into by Paine on behalf of the corporation, but that there was no action on the part of the board of directors or stockholders of the company authorizing such contract. Such contract contemplated an exchange of practically all of the corporation property for the Chicago real estate. Negotiations with the agents had been carried on from time to time for upwards of a year in regard to exchanging the Minnesota farm property for other property.

At the close of the evidence the defendant moved the court for a nonsuit, which was granted, and plaintiffs' counsel excepted. Judgment was entered in favor of the defendant, from which this appeal is taken.

For the appellants there was a brief by *Barbers & Beglinger*, and oral argument by *Chas. Barber*. They argued, among other things, that where a contract has been fully executed the doctrine of *ultra vires* is not available. *Hawkes v. Eastern Counties R. Co.* 1 De Gex, M. & G. 760; *Eastern Counties R. Co. v. Hawkes*, 5 H. L. Cas. 331; *Norwich v. Norfolk R. Co.* 4 El. & Bl. 445, 82 Eng. C. L. 397; *Steam Nav. Co. v. Weed*, 17 Barb. 378; *Poock v. La Fayette Building Asso.* 71 Ind. 357; *Pancoast v. Travelers Ins. Co.* 79 id. 172; *Wright v. Pipe Line Co.* 101 Pa. St. 204; *Whitney Arms Co. v. Barlow*, 63 N. Y. 62; *Manchester & L. Railroad v. Concord Railroad*, 66 N. H. 100; *Railway Co. v. McCarthy*, 96 U. S. 258; *Rider Life Raft Co. v. Roach*, 97 N. Y. 378; Morawetz, Priv. Corp. § 581; *Holmes & G. Mfg. Co. v. Holmes & W. Metal Co.* 127 N. Y. 252; *Louisville, N. A. & C. R. Co. v. Flanagan*, 113 Ind. 488; *Heims Brewing Co. v. Flannery*, 137 Ill. 309; *Thompson v. Lambert*, 44 Iowa, 239; 27 Am. & Eng. Ency. of Law, 360.

For the respondent there was a brief by *Felker, Stewart & Felker*, and oral argument by *F. C. Stewart*.

MARSHALL, J. The first question that requires consideration is, Was the contract of employment, made with plaintiffs, to negotiate an exchange of the corporate property in Pipestone county, Minnesota, for Chicago real estate, *ultra vires?* That must be answered in the negative. The articles of organization expressly provide, among the purposes of the corporation, that of dealing in real estate in town and country. Such purpose is made very prominent in the articles, and seems to have been one of the principal purposes of the organization. But if such were not the case, the con-

tract of agency having been fully executed on the part of plaintiffs, the doctrine of *ultra vires* cannot be invoked by the corporation to avoid performance of its part. *John V. Farwell Co. v. Wolf*, *ante*, p. 10. This subject has been recently, in the case cited, so exhaustively discussed, and the principles governing it laid down by this court, that further discussion of the matter at this time appears to be unnecessary.

If the trial court did not nonsuit plaintiffs upon the theory that the doctrine of *ultra vires* applied, then we assume the learned circuit judge held that the president of the corporation was incapable of binding it because no special authority was given him so to do by the board of directors. If it were the law that the president of a trading corporation could not bind it without special authority in that regard, intolerable mischiefs would result, for no person could then safely act in business matters with such an organization without first investigating the corporate records in respect to the authority delegated to its agent. When the law is rightly understood and administered, it does not sanction any such difficulties in business operations. A corporation may so conduct its affairs as to confer by implication, upon its president, powers much beyond those strictly incident to his office, even to the extent of exercising the entire powers of the corporation, which, by the articles, are vested solely in the board of directors. The powers of the president of a corporation, or any other officer thereof, do not depend solely upon the title of the office or the actual delegation of power, but upon the appearances with which the officer is clothed by the corporation; that is to say, it is the apparent power of the officer, not the actually delegated power, which governs. The law is well settled that, within the scope of his apparent power, the president of a corporation, by his acts, binds such corporation the same as if he were the agent of a natural person. This doctrine has been

McElroy and another vs. Minnesota Percheron Horse Co.

extended, from necessity, to give adequate protection to innocent persons dealing with corporate organizations through their officers and agents. As said by Prof. Thompson, in his late work on Corporations: "Few of the supposed dangers attending such dealings in fact exist." In §§ 4623, 4624 he lays down four well-established rules or principles that a person dealing with the president of a corporation may invoke for his protection when the corporation attempts to repudiate the acts of such president: (1) That the corporation is estopped from claiming in the particular instance that its president had not the powers which it has customarily allowed him to exercise in the face of the public. (2) That, if the corporation has received the benefit or fruits of the transaction, it is estopped from repudiating it, and is assumed to have ratified it. (3) In case the contract is evidenced by a sealed instrument, the principle that the presence of the corporate seal carries with it a presumption of actual authority on the part of the president and secretary to execute the contract. Such presumption, however, is rebuttable. (4) That proof of the authority of the president may be inferred from circumstances; it need not necessarily be established by the record. The first, second, and fourth of the above-mentioned principles were applied by this court in *Ford v. Hill*, 92 Wis. 188, where a corporation was held estopped from repudiating the act of its president in executing a judgment note, upon the ground, among others, that it was within the scope of his apparent authority as exercised for a considerable length of time.

Such principles here apply to the undisputed facts. George M. Paine was substantially the corporation. He owned all the stock, except six shares obviously kept in the names of others to render them eligible to hold offices. No one but Paine appears to have had any substantial pecuniary interest in the organization. The board of directors was made up of himself, his son Nathan Paine, who lived with him,

his son-in-law Charles Nevitt, a resident of the same place, T. M. Brown, an employee on the Minnesota farm, and H. M. Bogart, a relative living in Minneapolis. The corporation affairs, for about five years, had been conducted by George M. Paine and by his predecessor in office without any objections or proceedings whatever by stockholders or directors, so far as appears from the records. No election of directors by stockholders was had during that time, and no meeting whatever held, except one a few months before the making of the contract, at which the only business transacted was to fill the places of several directors who had resigned, which was done by election by those who remained. For two years and more negotiations had been going on for a sale of the property through plaintiffs' Chicago agency, all conducted by Paine or his predecessor, as substantially the only persons interested. The whole course of the corporation had been such as to lead the public, and particularly plaintiffs, to regard the president of the corporation as having full power to act in its behalf as its general agent, and to do all that such an agent might properly be authorized to do. Such was the apparent scope of the powers of George M. Paine at the time of the making of the contract in question. To such a state of facts the doctrine of estoppel, upon which all the aforesaid rules are founded, applies to protect the plaintiffs from the injustice of allowing the corporation to repudiate the act of its president, with whom they dealt upon the faith of appearances for which the corporation was responsible.

It follows from the foregoing that the nonsuit was improperly granted, and that the judgment of the circuit court should be reversed for that reason, and a new trial granted.

*By the Court.*— So ordered.