[Decided November 15, 1897.]

## THAYER *v.* NEHALEM MILL COMPANY.

(51 Pac. 202.)

1. CORPORATIONS — AUTHORITY OF AGENT TO MORTGAGE.— The directors of a corporation which owned a sawmill and store and a portion of the town site at the place where they were situated, which was at a distance from the office of the company and the residence of all its officers and directors, appointed a general manager, " with full power to manage and conduct the business of the corporation." Such manager conducted the business for some two years, buying logs, and manufacturing them into lumber, which he sold, hiring and discharging men, selling town lots, and receiving and disbursing the proceeds of the business. *Held*, that such manager had authority to execute a mortgage in behalf of the corporation on the town lots and logs and lumber at the mill, all which was held for commercial purposes, to secure the payment of indebtedness contracted in the management of the business.

2. USE OF CORPORATE SEAL.— A mortgage executed on behalf of a corporation by a duly authorized agent, and purporting to be under its seal, is not invalid because the seal attached is only a scroll, and not the regularly adopted corporate seal, since it is now settled that a corporate contract does not require a seal unless a similar contract, if made by an individual, would have to be sealed, and in such cases any convenient seal will accomplish the purpose.

From Tillamook: H. H. HEWITT, Judge.

Suit by C. Thayer and E. Thayer against the Nehalem Mill Company and Frank Patton to foreclose a mortgage executed to plaintiffs as trustees. Decree for plaintiffs, and defendant Patton appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Frank J. Taylor.*

For respondents there was a brief over the names of *W. W. Thayer, Claud Thayer,* and *Thos. H. Tongue,* with an oral argument by *Mr. Wallace W. Thayer.*

Opinion by MR. JUSTICE BEAN.

This is a suit against the Nehalem Mill Company and Frank Patton to foreclose a mortgage alleged to have been given by the defendant company on February 8, 1894, to the plaintiffs, as trustees, to secure the payment of certain sums due its employees and persons from whom it purchased material. The decree being in favor of the plaintiffs, defendant Patton appeals. The facts are that the Nehalem Mill Company is a corporation having its principal office at Astoria, Oregon. It was organized in 1891, to carry on a sawmill business and a general merchandise store in connection therewith at Nehalem, in Tillamook County, and was the owner of an undivided one half interest in the town site of Nehalem City. Owing to the topography of the country, communication was slow and difficult between the principal office of the company and the place where its mills were located. None of its directors or officers resided at the latter

place, but its business there was conducted entirely
through a general manager. At a meeting of the
board of directors held in Astoria on October 19,
1891, one H. E. Nelson was appointed general man-
ager; and at a subsequent meeting, held January 20,
1892, a resolution was adopted investing him "with
full power to manage and conduct the business of the
corporation." In pursuance of this appointment, Nel-
son immediately entered upon his duties, and con-
tinued to act thereunder until February 27, 1894, dur-
ing which time he bought logs and manufactured
them into lumber, hired and discharged employees,
sold the output of the mill, collected and disbursed
the proceeds of the business, kept all the accounts,
bought and sold merchandise, sold town lots, and, in
fact, had entire and exclusive control and manage-
ment of all the business of the corporation at Neha-
lem City. On February 8, 1894, the corporation was
indebted to divers and sundry persons for logs and
merchandise purchased and labor employed by Nel-
son in the conduct of its business, in the sum of $2,-
965.88, which indebtedness was evidenced by sundry
drafts drawn on it by the persons to whom the several
amounts were due, and accepted by Nelson as the
general manager. Finding himself unable to realize
on shipments of lumber fast enough to pay these
drafts as they matured, Nelson, for the purpose of
securing the payment thereof, and to satisfy the hold-
ers, so that the company might continue in business,
executed in the name and on behalf of the company
a mortgage on its interest in the Nehalem town site,
and on the lumber and logs then on hand to the

plaintiffs in this suit, as trustees, for the holders of the several drafts then outstanding. A short time thereafter, the company, having failed in business, conveyed and transferred all its property, both real and personal, to the defendant Frank Patton, in payment of its indebtedness to him, amounting to the sum of $15,923. On June 13, 1894, this suit was commenced by the plaintiffs to foreclose their mortgage. Patton alone appeals, and his contention is that plaintiff's mortgage is void for want of authority in Nelson to execute it in behalf of the corporation, and because it is not sealed with the regularly adopted corporate seal.

1. Neither of these positions is, in our opinion, sound. Nelson was the agent and general manager of the company, with full power and authority, as declared in the order of his appointment, "to manage and control the business of the corporation." He was given the entire supervision and management of its affairs at Nehalem, and was empowered, therefore, to do whatever was usual and necessary for that purpose. None of the officers of the corporation resided at that place or gave any particular attention to the business there, but depended entirely upon Nelson to conduct it for them. As general manager, he had the unquestioned authority to sell the property described in plaintiff's mortgage, and apply the proceeds in payment of the drafts in question, and there is no reason, in our opinion, why he could not anticipate such sale by giving a mortgage thereon to secure the payment of said drafts. Under the circumstances, it was but an ordinary and necessary business transaction: *Hoyt*

*v. Thompson's Executor,* 19 N. Y. 216.   An agent, the principal being absent, having full charge, management, and control of the business, "must necessarily," says Mr. Justice SCHOLFIELD in *German Fire Insurance Company* v. *Grunert,* 112 Ill. 75, "possess and exercise the same power and authority in the business that the principal could were he present; for, were it otherwise, the business, however well conducted, must soon terminate for lack of funds."   And in *Taylor* v. *Labeaume,* 17 Mo. 338, it was held that such an agent of a lumber company, the members of which lived abroad, had authority to transfer lumber belonging to the company in trust to pay off the hands in its employ, the court saying: "We regard Perkins as possessed of all the powers of an owner in managing the mill.   Good faith was all that could be exacted of him. There is no pretense that he did not act in a manner conducive to the best interests of the company.   The sale of lumber he made to the plaintiff was required by the unpaid-laborers at the mills, who, it seems, had confidence in him that he would pay them; and, but for this act, there must have been a total suspension of all operations, to the great detriment of the owners."   So, also, in *Hoskins* v. *Swain,* 61 Cal. 338, such an agent, in the absence of his principal, borrowed money and assigned an account to the lender as security therefor.   The defendants, when the account was presented to them for payment by the assignee, paid it in full.   The point in the case was whether this constituted payment to the principal, and that depended upon the authority of the agent to assign the account as security.   The court held the agent

had such authority, and put its decision on the ground that the principal had authorized him to act as general superintendent and manager of the business, which empowered him to do everything necessary, proper, and usual in the ordinary course of the business.

Upon the same principle, it was held in *Scudder* v. *Anderson*, 54 Mich. 122 (19 N. W. 775), that the manager of a mining company was presumably empowered to sell its personal property; and in *Carey Lumber Company* v. *Cain*, 70 Miss. 628 (13 So. 239), that the manager of a lumber company prima facie had authority to sell property of the corporation to pay debts contracted by him. Within the principle of these cases, we think Nelson had authority to execute the mortgage in suit. This is not the case of a general manager of a corporation in easy call of the principal officers making a mortgage upon the property to secure a loan, but is a transaction demanded by the exigencies of the situation, and, as we view it, was within the scope of his authority. Nor do we understand that the mortgage covers the machinery and property of the company used in carrying on the business for which it was organized, but only such property as it held for commercial purposes, and which Nelson had authority to sell and dispose of; and, therefore, the cases of *Stow* v. *Wys* 7 Conn. 214 (18 Am. Dec. 99), and *Despatch Line of Packets* v. *Bellamy Manufacturing Company*, 12 N. H. 205 (37 Am. Dec. 203), holding that the general agent of a corporation cannot sell or mortgage, to secure a loan, the property used by the corporation in the conduct of its business, are not in

point in this discussion. We do not question the doctrine of these cases under their particular facts, but it has no application to the question now in hand.

2. It is also claimed that the mortgage is void because the regularly adopted seal of the company is not affixed thereto. The testamentum clause is as follows: "In witness whereof, the said corporation has this day hereunto set its hand and seal, by the hand of H. E. Nelson, its attorney in fact, this 8th day of February, 1894"; and is signed "Nehalem Mill Company. [Seal.] H. E. Nelson, Manager and Attorney in Fact." But the seal used was a scroll made with a pen, and not the regularly adopted seal of the company. It is settled that a corporation can only deed or mortgage its real property by an instrument under its corporate seal (*Eagle Mills Company* v. *Monteith*, 2 Or. 277; *In re St. Helen Mill Company*, 3 Sawy. 88, Fed. Cas. No. 12,222); but, as said by Mr. Chief Justice Redfield in *Bank of Middlebury* v. *Rutland Railroad Co.* 30 Vt. 169, "it was never supposed that if authority were shown from the corporation to attach their seal to the contract, that it was indispensable that use should be made of the ordinary common seal of the company. Any other seal would have the same effect if adopted by the company. And this is ordinarily established by showing authority to execute a contract on behalf of the company under seal, and the fact of attaching some seal to the name of the company with the intent to seal on their behalf. So that at present nothing more is requisite than to show the authority of the agent to contract on behalf of the company in the particular form; *i. e.*, with a seal.

It was formerly supposed that a corporation could not enter into any contract except by attaching its ordinary corporate seal; but that doctrine originated at a time when the use of seals containing devices significant of the person or corporation to which they belonged was common, and, when affixed to an instrument, they were regarded as equivalent to a signing: Angell and Ames on Corporations, §§ 215, 216. Under these circumstances, it was, of course, important that a corporation, when executing a contract, should use its common or ordinary seal; and many English and some early American cases seem to hold that the rule still prevails. But it is not the established rule in the courts of this country. It is now settled here that a seal need not be attached to a corporate contract unless a similar contract, when made by an individual, would require a seal; and when a contract is required to be so executed, a corporation may adopt any seal which is convenient for the occasion, and is not confined solely to the use of its ordinary corporate seal: 1 Morawetz on Private Corporations, § 339; 2 Cook on Stock, Stockholders, and Corporation Law, § 722; 1 Devlin on Deeds, § 336; *Bank of Middlebury* v. *Rutland and W. Railway Company*, 30 Vt. 169; *Tenney* v. *East Warren Lumber Company*, 43 N. H. 343; *Johnston* v. *Crawley*, 25 Ga. 316 (71 Am. Dec. 173); *Porter* v. *Androscoggin Railroad Company*, 37 Me. 349; *Mill Dam Foundry* v. *Hovey*, 21 Pick. 428. If, therefore, we are right in our conclusion that Nelson had power and authority to execute the mortgage in suit, neither the defendant company nor its creditors can repudiate it for the want of the regularly adopted cor-

porate seal. It was suggested at the argument that this case was governed by the rule announced in *Jacobs* v. *McCalley,* 8 Or. 124; but that case is not in point here, because the mortgage in question does not provide the manner in which it may be foreclosed. It follows that the decree of the court below must be affirmed, and it is so ordered.

AFFIRMED.