The Northwestern Fuel Co. vs. Lee.

THE NORTHWESTERN FUEL COMPANY, Respondent, vs. LEE, Garnishee, Appellant.

*February 24 — March 14, 1899.*

(1) *Appeal: Findings.* (2, 3) *Corporations: Sale of assets: Authority of president.* (4) *Garnishment: Property subject to execution: Appeal.*

1. The findings of the trial court will not be disturbed on appeal where there is evidence to support them and no preponderance of evidence against them.

2. A corporation may, by its acts and methods of conducting its business, so far as third persons are concerned, as effectually clothe its officers with authority to manage, and even close out its business, as though a formal vote of record were taken.

3. A sale of personal property, constituting a closing out of the business of a corporation, accompanied by delivery of possession, is sustained in this case, although made by the president without the formal sanction of the board of directors, it appearing that the articles of organization expressly provided that the president should have the general direction, management, and control of the property, affairs, and business of the company, subject to the direction of the board of directors; that during the entire existence of the corporation he had conducted its affairs as chief managing officer; that the board of directors either knew of the transaction or did not know because they intrusted everything to the president; and that they took no steps to disaffirm it, even when garnishment proceedings had been instituted against the purchaser by a creditor of the corporation.

The Northwestern Fuel Co. vs. Lee.

4. An objection to garnishment proceedings on the ground that the principal defendant had property subject to execution sufficient to satisfy the plaintiff's claim cannot be raised for the first time in the supreme court.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

The plaintiff brought an action against the defendant, and summoned *C. S. Lee* as garnishee. The defendant defaulted, and the garnishee answered, denying liability. Issue was taken upon the answer so made, and upon the trial the court made findings in favor of plaintiff, and entered judgment against the garnishee, from which this appeal is taken.

For the appellant there was a brief by *Frawley, Bundy & Wilcox,* and oral argument by *C. T. Bundy.* They argued, among other things, that the president of a corporation could sell the company's assets only in the usual course of business. 3 Thompson, Corp. § 3982; 4 id. § 4632; *Stokes v. N. J. Pottery Co.* 46 N. J. Law, 237; *Hoyt v. Thompson,* 5 N. Y. 327; *Walworth Co. Bank v. Farmers' L. & T. Co.* 14 Wis. 325, 330. Even the board of directors cannot sell the assets and business without the consent of the stockholders. 3 Thompson, Corp. § 3983. A board of directors cannot act except when in session as a board, nor can the directors ratify an act done by such directors in their individual capacities. 3 Thompson, Corp. § 3905; *Baldwin v. Canfield,* 26 Minn. 43.

For the respondent there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.*

BARDEEN, J. The findings are vigorously attacked on the ground that they are not supported by the weight of the evidence. The chief question litigated on the trial was whether the garnishee had in fact purchased of the defendant certain personal property, consisting of coal, sheds, office, safe, office furniture, wagons, etc., of which he held pos-

session at the time of the service of the garnishee summons. The testimony was chiefly given by the garnishee and F. D. Sullivan, who had been the president and chief managing officer of the defendant company. Both admit that *Lee* made a proposition to purchase this property, but they insist that the deal was never consummated. Neither of the witnesses was frank and outspoken in giving his testimony. They dodged and hedged in every way possible, and made evasive and shuffling answers to very many of the questions put to them. The court evidently believed that they were impeached by the surrounding facts and circumstances. Were the case to stand upon the naked assertions of these two witnesses, it would be difficult to support the conclusion arrived at by the circuit judge; but, when viewed in the light of the attendant facts and circumstances, we do not feel justified in disturbing it. Considering the reluctance of the witnesses in answering questions, the shifty and evasive answers given, and the contradictions found in the testimony of *Mr. Lee*, we can readily see how the trial judge felt obliged to discredit the statements made, and to give weight to the other facts which put such testimony in dispute. The language of Mr. Justice MARSHALL in *Senour Mfg. Co. v. Clarke*, 96 Wis. 469, seems especially applicable to this case: "The trial judge has an opportunity of seeing and hearing the witnesses, observing their manner while testifying, and the benefit of many aids, of a persuasve character, calculated to materially assist in drawing correct inferences in regard to the facts, that cannot be preserved for the benefit of the appellate court; hence, the justice of the rule that such inferences will not be displaced by others drawn by such appellate court, unless the former are against the clear preponderance of the evidence, is apparent, and why it should be firmly adhered to is also manifest." It is unnecessary to run over in detail the testimony to be found in the record to support the findings. It is sufficient to say

that we find evidence to support them, and no clear preponderance against them.

It is especially urged that the evidence fails to show any authority of record, from either the stockholders or board of directors of the defendant, to the president, to close out the property of the corporation in the manner claimed in this case. There can be no doubt of the general rule that a president of a corporation, by virtue of his official position, can only sell its assets in the usual and ordinary course of business. But a corporation may, by its acts and the methods of conducting its business, so far as third persons are concerned, as effectually clothe its agents with authority to handle, and even close out, its business, as though a formal vote of record were taken. It appears that the president, by the articles of organization, was expressly clothed with extraordinary powers in managing the business of the corporation. Article 6 says, in effect, that the president shall have the general direction, management, and control of the property, affairs, and business of the company, subject to the direction of the board of directors. From the inception of business down to the time of the alleged sale to *Lee*, Sullivan had been the head and front of the corporation, and had conducted its affairs and handled its business as the chief managing officer. It is in proof that *Lee's* proposition to purchase the property in question had been talked over by the board of directors. There can be no doubt but that they were informed of the proposition, and that the matter was considered by them, although no formal record was made of the action taken. This seems to be quite in accord with their usual practices. Sullivan was the moving spirit, and conducted the business and handled the affairs of the company without any limitation as to his authority from the board. We find that, very soon after *Lee's* proposition was talked over by the board, Sullivan bills to him several full car loads of coal they had recently purchased, and *Lee*

enters into possession of the property. He sells the coal, holds possession of the office, and shortly before the service of the garnishee process pays over to the corporation some $1,200 or more, in pursuance of the terms of his proposition to purchase. If the board did not know of this deal, it was because they were intrusting everything to Sullivan; and, if they proposed to disaffirm the sale to *Lee*, it was their duty to act promptly. No such action was taken, and to this day the corporation has not attempted to rescind the deal. They might have appeared in this proceeding and contested the matter; but they remained quiescent, and have left *Lee* and Sullivan to fight their battles. Considering the extraordinary powers vested in the president, and the manner in which he was permitted to conduct the business and handle the affairs of the company, we are satisfied that the rules laid down in *Ford v. Hill*, 92 Wis. 188; *John V. Farwell Co. v. Wolf*, 96 Wis. 10; and *McElroy v. Minnesota P. H. Co.* 96 Wis. 317, are applicable here, and fully sustain the conclusion of the trial court.

The court having found that there was a sale of this property to *Lee*, which finding we have sustained, it becomes immaterial to inquire whether there was certain coal turned out to him to pay the Holm order. Whatever was done in that regard was done subsequent to the alleged sale. The fact that the company gave an order on the garnishee to Holm is confirmatory of the theory of a sale. At the time of the service of the garnishee summons, *Lee* had coal which he afterwards sold for $356.72. This was $143.08 more than the Holm order, and which, with the purchase price of the other property, is more than the amount of plaintiff's judgment.

It is further urged that the court should have dismissed the proceeding because the evidence showed that the defendant had property subject to execution sufficient to satisfy the plaintiff's claim. There is no motion to dismiss the garnishee

proceedings that we can find in the printed case, and no ruling of the court is preserved from which we can infer that such a motion was made. If any such motion was made, we are unable to find any record of it, and without it we find no necessity for ruling on that question. If such a motion was in fact made, the evidence as to the property possessed by defendant is so unsatisfactory that we are not able to say that the court abused its privilege in denying it.

*By the Court.*— The judgment of the circuit court is affirmed.