AMERICAN NATIONAL BANK, Respondent, v. WHEELER-ADAMS AUTO COMPANY, et al, Appellants.

(141 N. W. 396.)

**1.  Corporation—Mortgage by Managers—Estoppel.**

Where a husband and wife and a third person were sole stockholders of a corporation, the wife committing her interests to her husband and taking no part in management of corporation except to attend directors' meetings, the husband and third person assuming entire management at all times, and they executed a chattel mortgage on corporate merchandise to secure money loaned to and used by the corporation; held, the corporation and stockholders were estopped to deny validity of mortgage on any other ground than fraud.

**2.  Corporations—Powers—Right to Borrow Money and Give Security.**

A private corporation which may require use of money to carry out its purposes has implied or incidental power to borrow money for such purposes, and to give customary evidences of debt and security therefor. **Dictum.**

**3.  Corporations—Powers—Officers Abandoning Functions to Managers.**

Where the sole directors and stockholders of a corporation abandon their functions and duties and permitted the president and secretary to assume and control management, the corporation and those deriving rights from it while so managed are bound by the acts of its officers to the same extent as if they had been directed by the board.

**4.  Corporations—Powers of Officers—Statutory Provisions.**

The apparent purpose of Civ. Code, Sec. 434, as amended by Laws 1909, Chap. 118, is to empower stockholders representing three-fourths of the outstanding stock to compel the directors to execute a sale or mortgage of all the corporate property, should stockholders so elect; it does not limit the usual powers of the board of directors in sale or mortgaging of corporate property.

**5.  Corporations—By-Laws, Who Bound by.**

A corporation by-law binds only officers, directors and stockholders of the corporation, or third persons having knowledge

·of and who have been brought into privity with it, so that it may operate to establish a contractual relation between the corporation and third persons.

**6.    Corporations—Powers of Officers—Statute, When Inapplicable.**

Civ. Code, Sec. 434, providing for exercise, conduct and control of corporate powers and business by a board of directors, and that no act done is valid without a quorum at a legal meeting, does not apply where by direction, assent, or acquiescence of stockholders the executive officers assume and exercise the functions of the directorate.

(Opinion filed May 10, 1913.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by the American National Bank against the Wheeler-Adams Auto Company and others, to foreclose a chattel mortgage. From a judgment for plaintiff, defendants appeal. Affirmed.

*R. W. Parliman,* for Appellants.

Section 434, Civ. Code, was taken from the Civil Code of California, Beveridge V., N. Y. E. R. Co., 112 N. Y. 1; Hopt v. Thompson's Exr., 19 N. Y. 216. Petitioner's mortgage is not a valid lien upon this property. Alta Silver Mining Co. v. Alta Placer Mining Co., 78 Cal., 629, 21 Pac. 373; Des Moines Mfg. Co. v. Tilford Milling Co., 9 S. D. 542. Corporate powers can only be exercised by board of directors. 9 S. D. 542; Monroe Mercantile Co. v. Arnold et al., (Atl.) 34 S. E. 176; Baldwin v. Canfield, (Minn.) 1 N. W. 261; In re Plymouth El. Co., 191 Fed. 633.

*U. S. G. Cherry, (Herbert Abbott, of Counsel),* for Respondent.

Even if this by-law became effective, it was not operative as against respondent. It only bound the directors, stockholders and those who had knowledge of its existence. State Banking & Trust Co. v. Taylor, S. D., 127 N. W. 591; 1 Cook Corporations, 6th edition, P. 26, Sec. 4a; III, PP. 2319, Sec. 719; 2323 Sec. 720; 2350 Sec. 725; 2356 Sec. 725; Barber v. Stromberg, Neb., 116 N. W. 157.

The rule of implied authority to corporate executive officers is to be invoked where, as in the case at bar, there has been a course of conduct for a considerable time, or long enough under the circumstances of the particular case to cause a third party to rely upon the same, and where the corporation, or the dissenting stock-

holders, have received the benefit of the act in question and have not promptly rescinded it upon the receipt of notice of it. Magowan v. Groneweg, 14 S. D. 543; 86 N. W. 626; Id v. Id, 16 S. D. 29; 91 N. W. 335; Centerville Tp. v. Jenter, S. D., 126 N. W. 575; Northwestern Fuel Co. v. Eau Claire, Wis., 78 N. W. 584; Davis v. Coal Company, 21 S. D. 173, 179; 110 N. W. 113, 115; Salem Iron Co. v. Lake Superior Consol. Iron Mines, 112 Fed. 239; 50 C. C. A. 213; Cook on Corporations, page 2277.

The amendment of section 434, C. C., by chapter 118, Session Laws, 1909, in no manner changes any of the rules of law governing and applicable to the law of corporations in this State as the same existed prior to such amendment.

The effect of the amendment was merely to make it mandatory upon the board of directors to cause the conveyance or a mortgage of all the corporate property to be made, when, in the judgment of three-fourths of the stockholders, that should be done and they should so direct.

That this has been the spirit and purpose of the legislative acts pertaining to corporations, is shown also by the language of chap. 2 of the Session Laws of 1907.

SMITH, J. Appeal from the circuit court of Minnehaha county. Action to foreclose a chattel mortgage. The defendant company became incorporated under the laws of this state about the 1st of March, 1911. The sole incorporators were A. C. Wheeler, Alice M. Wheeler, his wife, and C. D. Adams, the persons designated in the articles of incorporation as directors. The capital stock issued aggregated $6,000, of which C. D. Adams received $3,000 par value, A. C. Wheeler, $2,500 par value, and $500 par value to Alice M. Wheeler. The three were the only stockholders of the corporation. About March 1, 1911, a stockholders' meeting was held for the purposes of organization, at which all stockholders were present. The three persons named were elected dirctors, and at the same time A. C. Wheeler was chosen president, C. D. Adams, secretary and treasurer, and Alice M. Wheeler, vice president. No other officers were ever elected. The aggregate sum of $6,000 partly in merchandise and the balance in cash became the working capital of the corporation. The general purpose and authority of the corporation was to carry on the business of buying and selling automobiles and automobile supplies and the do-

ing of an auto livery business. It commenced business about the 1st of March, and opened a deposit and checking account with the plaintiff bank, transacted all its banking business with said bank down to the beginning of this suit, and from time to time procured loans from plaintiff bank, the proceeds of which were deposited to its account, which loans were evidenced by promissory notes. All funds borrowed and all moneys deposited were used in conducting and carrying on the business of the corporation, and were checked out by its officers, C. D. Adams and A. C. Wheeler.

At the first meeting of the stockholders certain by-laws were voted for, and were transcribed into the proceedings of the meeting, but were not certified by the directors or secretary, and were not copied into any book known as the book of by-laws. At a meeting of the stockholders held on the 16 day of March it was "moved and carried that C. D. Adams shall devote his entire time in managing and caring for said business, and shall receive therefor the sum of $100 per month." No other meeting of the stockholders or board of directors was ever held. On the 16th day of March, 1911, the defendant, through C. D. Adams and A. C. Wheeler, its president and secretary, borrowed from the plaintiff bank the sum of $1,154.78, and on the 19th day of April, 1911, borrowed the further sum of $5,000 evidenced by promissory notes for the amounts, executed by Wheeler-Adams Auto Company by C. D. Adams and A. C. Wheeler. The proceeds of these notes were deposited in the plaintiff bank, and checked out and used by the defendant in its ordinary course of business. About the 11th of August, 1911, plaintiff was urging payment or security on these notes, and on said date plaintiff entered into an agreement with C. D. Adams and A. C. Wheeler that it would refrain from commencing suit for the collection of said indebtedness, which was threatened, and would continue to carry the indebtedness for a period of 30 or 60 days in consideration of the making and delivery of a chattel mortgage as security therefor. In consideration of said indebtedness and leniency thus extended, defendant by A. C. Wheeler and C. D. Adams did execute and deliver to plaintiff a chattel mortgage as security for said indebtedness on merchandise of defendant company described in an invoice attached to the mortgage. The mortgage was filed on the 14th day of August, 1911. After the expiration of more than 60 days, plaintiff de-

manded payment of the indebtedness, which was refused, except as to payments aggregating $300. The entire indebtedness was due and payable before the beginning of the foreclosure action.

The sole question presented upon this appeal arises upon defendant's denial of the execution and existence of the mortgage because of alleged want of authority on the part of C. D. Adams and A. C. Wheeler to execute the same.

It is conceded that no action of the board of directors or stockholders was ever had at any regularly called meeting authorizing the execution of the mortgage. It is respondent's contention, however, that the stockholders and directors of the corporation entirely abandoned its management and control, leaving the business of the corporation wholly in the hands of A. C. Wheeler, its president, and C. D. Adams, its managing agent, secretary and treasurer, and that by reason thereof they were given and had authority to execute the mortgage. Findings and judgment for plaintiff. Defendants appeal upon some 47 assignments of error, together with 19 specifications of insufficiency of evidence to sustain the findings. These assignments, however, present but a single question, viz., the question of the authority of the persons who executed the mortgage to bind the corporation. There is little, if any, conflict in the evidence, and a careful examination thereof satisfies us that it fully sustains the findings of the trial court.

[1] The trial court found that from the time of the stockholders' meeting on March 1st until the meeting of the directors, March 16th, the business of the corporation was conducted and carried on solely and entirely by C. D. Adams and A. C. Wheeler, and thereafter the entire conduct, management, control, and carrying on the business of the corporation was left, abandoned and turned over to them, and was not interfered with or participated in by Alice M. Wheeler in any manner whatever. The evidence clearly sustains this finding, and discloses that whatever duties and interests Alice M. Wheeler had in the business were left under the control of her husband, A. C. Wheeler, who together with C. D. Adams had the entire and exclusive control and management of all the affairs of the corporation from its inception down to the time of the trial. It is true Alice M. Wheeler testified that she had no knowledge of the execution of the mortgage until some time in September, but this becomes wholly immaterial in view of the fact

that she had plainly committed her interests to the control of her husband, and never at any time acted or in any way interfered with the management of the business, further than to attend the two meetings of the board of directors above mentioned, at one of which the board committed the management and care of the business to C. D. Adams. And the record clearly shows that her husband A. C. Wheeler at all times participated in and controlled the affairs of the corporation, together with C. D. Adams. It is undisputed that the corporation received the full benefit of the funds obtained from the plaintiff bank for repayment of which the mortgage was given as security, and no action was ever taken by the corporation seeking to disaffirm or rescind the action of Wheeler and Adams. We think it entirely just and equitable that the corporation, as well as its directors and stockholders under these circumstances, should be held estopped to deny the validity of the mortgage upon any ground whatever other than fraud.

[2] No question is raised as to the power of the corporation to borrow money and to execute the ordinary evidences of indebtedness, or to give security therefor, in the transaction of its ordinary business. The generally prevailing rule in this country is stated in 10 Cyc. 1101 (b): "Every corporation, except those organized for public and governmental purposes, which may require the use of money for the carrying out the purposes of its organization, has an implied or incidental power to borrow money for such purposes as much as an individual has, although no such power is expressly granted in its charter; and to give the customary evidences of debt therefor, and to add to this the customary security. * * * The rule broadly is that where an authority is given to a corporation to engage in a particular business, or to carry out a particular purpose, pecuniary or ideal, and there are no special restraints in its charter, it takes the power as a natural person enjoys it, with all its incidents and accessories; and that it may consequently borrow money to attain its legitimate objects, precisely as an individual may, and may bind itself for the payment of the same by any form of obligation not forbidden." The question decisive of this appeal therefore is not whether the corporation has power to borrow money for the transaction of its ordinary business and to give security therefore, but is as to au-

34—Vol. 31, S. D.

thority of C. D. Adams and A. C. Wheeler to execute the mortgage on behalf of the corporation.

[3] Appellant's contention is that the mortgage was not authorized by any action or resolution of the board of directors or stockholders, but was executed and delivered by the president and secretary without any authority whatever. The trial court found and the record conclusively shows that A. C. Wheeler, Alice M. Wheeler, his wife, and C. D. Adams, the sole directors and stockholders of the corporation, wholly abandoned their functions and duties as directors and stockholders, and permitted A. C. Wheeler president, and C. D. Adams, secretary, its executive officers, to assume and exercise the entire control and management of the affairs and business of the corporation. Such a course of conduct estops, not only the corporation, but its directors and stockholders, from questioning the validity of acts of its executive officers, performed in the usual and ordinary course of business and without fraud, to the detriment of third parties, who have acted in good faith and without notice of actual want of authority on the part of such executive officers.

The case of Cunningham v. German Ins. Bank, 41 C. C. A. 609, 101 Fed. 977, is directly in point. In that case the president and secretary of the corporation, without authority of the board of directors or stockholders, executed a mortgage upon the real estate and plant of the corporation to secure a past due indebtedness to plaintiff bank. The validity of this mortgage was reviewed on appeal. The court said: "The proof was ample to show that the corporation of Scanlan & Co. practically devolved the powers of the board of directors upon its executive officers, and that this method of doing business was not casual and temporary merely, but continuous from the date of its commencing to do business to the end. The board of directors was dormant. The rule is that where, by the direction or acquiescence of the stockholders, the executive officers of a corporation assume and exercise the functions of the board of directors, the corporation and those deriving rights from it while it is so managing its affairs are bound by the acts of its officers to the same extent as if they had been directed by the board." The doctrine is sustained by an overwhelming weight of authority, and has in effect been adopted by this court in certain of its decisions.

In Magowan v. Groneweg, 14 S. D. 543, 86 N. W. 626, the authority of the president, secretary, and treasurer and certain directors of the corporation to dispose of the entire assets of the corporation without authorization by official action of the stockholders or board of directors was challenged.  The transfer was sustained on the ground that there had been no regular meeting of the board of directors since the organization of the corporation, that the sole management of the business had been left to the secretary and treasurer, and that the bill of sale was signed by the president, secretary, and treasurer and two directors.  The court cites with approval Northwestern Fuel Co. v. Euclaire Fuel & Supply Co., 102 Wis. 426, 78 N. W. 584, wherein that court said: "There can be no doubt of the general rule that a president of a corporation, by virtue of his official position, can only sell its assets in the usual and ordinary course of business.  But a corporation may, by its acts and the methods of conducting its business, so far as third persons are concerned, as effectually clothe its agents with authority to handle, and even close out, its business, as though a formal vote of record were taken."  This case was affirmed on rehearing in 16 S. D. 29, 91 N. W. 335.  See, also, Davis v. Coal Co., 21 S. D. 173, 110 N. W. 113; Wood v. Saginaw Gold Mining & Milling Co., 20 S. D. 161, 105 N. W. 101; Hunt v. Northwestern Mortgage Trust Co., 16 S. D. 241, 92 N. W. 23; McElroy v. Minn. Percheron Horse Co., (96 Wis. 317) 71 N. W. 652; Ford v. Hill, 92 Wis. 188 (66 N. W. 115, 53 Am. St. Rep. 902); Eureka Iron Works v. Bresnahan (60 Mich. 332) 27 N. W. 524; Preston Nat. Bank v. George T. Smith Co., 84 Mich. 364, 47 N. W. 502; Conley v. Collins, 119 Mich. 519, 78 N. W. 555, 44 L. R. A. 844; McKiernan v. Lenzen, 56 Cal. 61; Philip v. Campbell, 43 N. Y. 271; People v. North River Sugar Refining Co., 121 N. Y. 582 (24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843). Thayer v. Nehalem Mill Co., 31 Or. 437, 51 Pac. 202; Stokes v. N. J. Pottery Co., 46 N. J. Law, 237; Martin v. Niagara Paper Mfg. Co., 122 N. Y. 165 (25 N. E. 303); Welch v. I. & T. Bank, 122 N. Y. 177, 25 N. E. 269.

In McElroy v. Minn. Percheron Horse Co., supra, the Supreme Court of Wisconsin said: "A corporation may so conduct its affairs as to confer by implication upon its president, powers much beyond those strictly incident to his office, even to the extent

of exercising the entire powers of the corporation, which by the articles are vested solely in the board of directors. The powers of the president of a corporation, or any other officer thereof, do not depend solely upon the title of the office or the actual delegation of power, but upon the appearances with which the officer is clothed by the corporation; that is to say, it is the apparent power of the officer, not the actually delegated power, which governs. The law is well settled that, within the scope of his apparent power, the president of a corporation, by his acts, binds such corporation the same as if he were the agent of a natural person. This doctrine has been extended from necessity to give adequate protection to innocent persons dealing with corporate organizations through their officers and agents." In Conely v. Collins, supra, the president of the corporation executed a conveyance of the company's stock in trade, which was challenged for want of authority. The court said: "To determine what Hathaway's authority was, you should look rather at what he did by assent of the stockholders than by what he called himself. * * * No meetings of the stockholders of the company were held, and apparently the business was left with Hathaway to manage and control. None of the stockholders did anything concerning the management of the business. Hathaway employed Lynch to assist him and exercised all the power of management of the business in every particular, and presumably so by the consent of the stockholders. He continued to exercise such authority up to the time the transfer was made June 24, 1894. * * * The court below was not in error in holding that Hathaway had power to execute the conveyance."

[4] The authorities cited, as well as many others not cited, fully sustain respondent's contention. Appellant in its brief refers to Civil Code, § 434, as amended by chapter 118, Session Laws of 1909. The section as amended in no manner affects the doctrine established by the foregoing decisions. It does not purport to admit the ordinary powers of a board of directors in the sale or mortgaging of corporate property, nor is it made a condition precedent to the exercise of that power. The apparent purpose of the amendment is to authorize stockholders representing three-fourths of the outstanding stock to compel the directors to execute a sale or mortgage of all the corporate property, should the stockholders so elect.

[5]    Appellant also founds its contention in part upon one of the alleged by-laws herein-before referred to, which provides that: "No note, mortgage, or other evidence of indebtedness of the company shall be given without the consent of the board of directors at a meeting held for that purpose." It is doubtful upon the record whether any of the by-laws referred to ever became operative, as the same do not appear to have been certified by the board of directors or recorded in a book of by-laws, as required by Civil Code, § 430. But, without deciding that question, it is settled that a by-law of a corporation binds only officers, directors, and stockholders of the corporation, or third persons who have knowledge of and have been brought into privity with it, so that it may operate to establish a contractual relation between the corporation and such third parties. 1 Cook on Corporations, § 4a; 10 Cyc. 351 (5). In Hunt v. Northwestern Mortgage Trust Co., 16 S. D. 241, 92 N. W. 23, certain by laws of a corporation were offered in evidence as tending to show want of authority in the president to execute a contract. The exclusion of the evidence was sustained because the contents of the by-laws were not disclosed. The court, however, said: "But, assuming they would have shown want of authority in the president to execute the guaranty on behalf of the defendant, such want of authority would have constituted no defense in this action. There can be no doubt of the corporation's power under its amended charter to own, transfer, and guarantee the payment of such paper as is involved in this action; and, having accepted the benefits of the contract executed on its behalf by its president, it is liable upon such contract, regardless of the question of the president's original authority to execute it. Dedrick v. Mortgage Co., 12 S. D., 59, 80 N. W. 153."

[6]    Appellant's contention on this appeal is founded largely upon section 434, Civil Code, which provides, in substance, that the corporate power, business, and the property of all domestic corporations must be exercised, conducted, and controlled by its board of directors, and declares that, unless a quorum is present and acting at a legal meeting, no business performed or act done is valid against the corporation; and upon certain decisions of the California court construing the same provisions in the Code of that state. The following among other cases are cited as sustaining appellant's contention: Alta Silver Mining Co. v. Placer Min-

ing Co., 78 Cal. 629, 21 Pac. 373; Pacific Bank v. Stone, 121 Cal. 202, 53 Pac. 634; Blood v. La Serena Land & Water Co., 113 Cal. 221, 45 Pac. 252; Citizens' Security Co. v. Hammel, 14 Cal. App. 564, 112 Pac. 731; Curtin v. Salmon River Hydraulic Gold Mining Co., 130 Cal. 345, 62 Pac. 552, 80 Am. St. Rep. 132; Des Moines Mfg. Co. v. Tilford Milling Co., 9 S. D. 542, 70 N. W. 839, together with decisions of other states having similar statutes. None of these decisions are in conflict with the principles established by the decisions above cited. These decisions are founded on the doctrine of ostensible agency and estoppel. An examination of the cases cited by appellant will disclose that in most of them the decision turned upon the sufficiency of some specific action, resolution, or by-law of the corporation to confer authority upon executive officers to perform some specific act. A complete review of these decisions would unduly extend this opinion, but for the purpose of illustration attention may be called to the case of Citizens' Security Co. v. Hammel et al., supra, where it was held that seven members of the board (of directors) out of a total membership of eleven, notwithstanding they constituted a majority had no authority to pledge the property of the corporation for an antecedent debt, unless they were legally assembled for the purpose of transacting corporate business. The alleged action of the board itself was held invalid because not legally assembled, and because the purported action consisted only of conversations participated in by a minority of the members, the others not having been shown even to have been aware of such conversation; no resolution or formal action having been had.

In Alta Silver Mining Co. v. Alta Placer Mining Co., supra, the decision turned upon the sufficiency of a verbal authorization given to the secretary of the company by directors or stockholders to execute a mortgage, without any resolution or formal action of the board when legally assembled. The abandonment by stockholders or directors of their duties and functions, and their acquiescence in the exercise of such duties and functions by executive officers, as grounds of estoppel, were not involved, nor does it appear that the mortgage was given as incidental to the transaction of the ordinary business of the corporation, or that it received and retained the proceeds of the mortgage.

The case of Des Moines Mfg. Co. v. Tilford, 9. S. D. 542, 70

N. W. 839, cited and relied upon by appellant, is in line with the California decisions.   The contention in effect was that the corporation held out Chantry as its president and Miller as its secretary, clothed with apparent authority to manage its business, and ought not to be permitted to question their authoriy.   The corporation was held not liable for the acts of the president and secretary in ordering certain milling machinery in the name of the corporation.   The machinery ordered was to complete the equipment of a mill then under construction.   Chantry, the president, and one McPherson, in consideration of $6,000 in stock of the corporation, had agreed to furnish and install at their own expense all machinery necessary for such equipment.   The company was incorporated in June, the machinery ordered between March and September.   The corporation was not at that time a going concern.   It never in any manner authorized Chantry or Miller to order machinery in its name.   The directors knew that machinery was being installed, but supposed plaintiff was putting it in for Chantry and McPherson, under their agreement.   It was not claimed that the directors or stockholders had abandoned the management or control of the affairs and property of the corporation.   The decision turned on the single question whether the president and secretary, as such officers, had authority to bind the corporation without express or implied authority from the board of directors.   The question of estoppel by abandonment of control was not involved.   The case falls easily within the general doctrine laid down in 10 Cyc. 1199 (b), adopted in the California decisions cited.   The distinction between the two classes of cases is indicated in 10 Cyc. 1199 (b), where, after stating the general rule of acquiescence and estoppel, it is said: "But in the absence of circumstances of assent and acquiescence, such as may afford circumstantial or presumptive evidence of a precedent authorization, then on principles already discussed, the directors can give a valid authorization of so important a measure as a mortgage of the property of the corporation only when acting and consulting together as a board duly assembled."

A review of the numerous cases cited and discussed by counsel in their briefs would be interesting, but would extend this opinion beyond reasonable bounds, and we must refrain from attempting it.   A careful review of the entire record satisfied us that the

learned trial court was right in its decision, and that the judgment and order appealed from should be affirmed.