TAYLOR, Plaintiff in Error, *vs.* LABEAUME, Defendant in Error.

1. A general agent, having the entire superintendence and management of the business of a lumber company, the members of which live abroad, has authority in good faith to make a transfer of lumber in trust to pay off the hands in the employ of the company. The creditors of the company cannot avoid such a transfer on the ground that the members of the company had previously agreed with a third person to deliver all the lumber to him to be disposed of for the company; certainly not, where such third person recognizes the right of him to whom the transfer is made, and does not insist that he himself has any lien or claim.

*Error to St. Louis Circuit Court.*

*R. M. Field,* for plaintiff in error. I. There was error in giving defendant's fourth instruction to the jury. 1. By that instruction, the jury were told that a simple delivery to Greene would take away from the company and its agents all authority over the lumber. This proposition, manifestly, cannot be maintained. 2. But even if the proposition were taken with the qualification, that Greene received the lumber under circumstances giving him a right to hold it against the company for his commission or for any liabilities incurred, still it was manifestly erroneous as between the parties to the record. For any lien on the part of Greene was personal to himself, and the record shows that he did not insist on it. The attaching creditors were clearly not entitled to set up Greene's lien to defeat the plaintiff. Story's Agency, §372, *ad finem.* II. There was error in refusing the instruction marked No. 1, of those asked by the plaintiff and refused. The refusal of

Taylor *v.* Labeaume.

this instruction was equivalent to telling the jury that the agreement between Greene and Rantoul did, of itself, transfer the lumber to Greene. In this view, there was an end to this case. III. There was error in refusing plaintiff's second overruled instruction. By this refusal the court, in effect, told the jury that secret and unknown limitations on the power of a general agent, would be effectual against third parties. Story on Agency, §126, §127, *et seq.*

*Todd & Krum,* for defendant in error. 1. The court below did not err in giving instruction No. 1, because the plaintiff's evidence not only tended to prove, but did, if true, (and the plaintiff cannot deny it,) prove that the transfer of the lumber to plaintiff, by Perkins, was in trust to sell it to pay certain debts, and if in trust, of course Perkins' power therefor had to be proved to render it valid. 2. But the court below did err in giving instructions Nos. 1 and 2, at the request of the plaintiff, for it is not true, that Perkins, although a general agent, thereby had power to convey the company's property in trust to pay their debts, and to delegate, with such a transfer, power to take it abroad to market, sell it, and out of the proceeds pay expenses and such debts. A general authority to an agent to sell means to sell in the ordinary sense of that term, and only an absolute sale, and for cash alone, unless some custom or usage be shown to the contrary. Besides, a general agent has no authority to delegate his powers to another. But a transfer in trust to another to sell, is violative of the above principles of the law of agency. 3. The court did not err in giving for defendant instruction numbered 4. 4. The court did not err in refusing to give instructions Nos. 1 and 2, asked by the plaintiff. Because, by reason of the instructions given, the court had made the issue turn upon the fact, whether this lumber had been, in point of fact, taken by the company out of the hands and control of Perkins, and put into the hands and control of another agent, at the time Perkins undertook to transfer it. 5. In answer to subdivision two of point one, in the plaintiff's brief, we cite 18 J. R. 366, 367.

SCOTT, Judge, delivered the opinion of the court.

This was an action of trover for lumber, begun by Taylor against Labeaume, in the St. Louis Circuit Court, in November, 1848. There was a verdict and judgment thereon for the defendant.

In the year 1848, a company, composed of members residing in the east, was carrying on the business of cutting and sawing lumber at St. Croix falls, in Wisconsin. Hamlet H. Perkins was the agent for the company, the members of which were absent, and he carried on the business for them with as ample powers as though he had been a member. In the summer of 1848, the company became in arrears to the workmen employed in their business, and they becoming very impatient for their pay, Perkins agreed with the plaintiff that he should take down to St. Louis a raft of 400,000 feet of lumber and with the proceeds satisfy the demands of the laborers, first paying the expenses of taking it to market. A bill of sale was made to the plaintiff for the lumber on the 27th of July, 1848, and he hired McPhail and Whiting to take it to St. Louis, and it was delivered to them for that purpose. Taylor was requested to go to Mr. Greene, of St. Louis, who had been interested for the company, and if he would pay the amount for which the lumber was sold at St. Croix, and all the the expenses incurred in taking it to St. Louis, it was to be delivered to him. After the lumber was brought to St. Louis, it was taken by the defendant by virtue of a process at the suit of the creditors of the company.

The defendant produced the testimony of I. T. Greene, mentioned above, who deposed that, in July, 1848, he was at St. Croix with Robert Rantoul, who was acting president of the company; that previous to that, the mills had been carried on by Hamlet H. Perkins and others, as lessees of the company; that on the occasion referred to, a settlement took place between the company and lessees, and all the lumber then on hand, including that in controversy, was turned over by the lessees to the company; that Perkins was made agent for the

company to carry on the business. This was on the 25th of July, 1848. There were then about 700,000 feet of lumber at the mills, ready for market. The whole, including the quantity in dispute, was delivered by Rantoul to witness (Greene) who accepted the same under an agreement made that day between witness and Rantoul, by which the company bound themselves to deliver all their lumber to him to be disposed of for them — the lumber to be delivered and sold, and accounted for in the manner specified in the agreement. Greene resided in St. Louis, and the lumber was to be delivered at that place. The agreement between Rantoul and Greene expressly stipulates, that no lumber is to be considered as delivered until it is measured by the lumber master of St. Louis. Greene further testified that he assumed the risk of taking the lumber delivered to him to St. Louis, and made a contract with McPhail and Whiting to run it to St. Louis, who, under the contract, took possession of it and began running it down the river. On the settlement above mentioned, the company assumed to pay the wages of the hands employed by the lessees. On the 21st of August, 1848, the plaintiff came to St. Louis, and called on the witness, Greene, and informed him of the disposition of the lumber, that had been made by Perkins, and showed his papers, and proposed that if Greene would advance $2,800 he would give up the lumber to him. This Greene declined, but concluded to assist in disposing of the lumber to the best advantage, and if he could, he would pay off the $2,800 and make an end of the matter. So when the lumber arrived, Greene and plaintiff laid hold of it together and proceeded to dispose of it.

On cross-examination, Greene stated that no formal delivery of the lumber was made by Rantoul to him at St. Croix, but he understood that he was to take it under his agreement.

The payments made to McPhail and Whiting, for rafting the lumber to St. Louis, were by the plaintiff, and they gave him a receipt for the lumber, with an undertaking to deliver it to him at that place. The powers of Perkins, as agent in the

fullest manner, were testified to by numerous witnesses as well as by himself.

The court gave the following instructions for the defendant :

1. If the jury believe from the evidence, that the transfer of this lumber by Perkins to Taylor was, that he should take the same to market, sell it, and out of the proceeds pay the enumerated debts, expenses of running it to St. Louis and the like, and the surplus, if any, should be paid to the company, then the transaction was a transfer in trust to pay debts, &c., and not an absolute sale ; and if the jury find that it was a transfer in trust, such as aforesaid, then, unless the plaintiff prove to the jury that Perkins was empowered and had authority from the St. Croix falls company to make such a transfer of this lumber, they ought to find for the defendant.

2. Every person dealing with an agent is bound to know his powers, and all acts of an agent, not authorized by his powers, are invalid and do not bind his principal. If, therefore, the jury believe from the evidence, that Perkins had not the authority, as agent of the St. Croix falls company, to transfer this lumber to Taylor, as Taylor, in this suit, claims that he did, then they ought to find for the defendant.

3. If the jury should believe from the evidence, that the transfer to Taylor was an authorized act, and that it was in trust to sell, and with the money pay certain debts and expenses, and the balance, if any, to belong to the St. Croix falls lumber company, and that all such debts and expenses that have been proved have been paid out of the proceeds of said lumber or other means of the company, then they should allow the plaintiff only nominal damages ; but if any remains unpaid, then they should allow the plaintiff the amount thereof.

4. If the jury find from the evidence that, prior to the giving of the bill of sale offered in evidence by the plaintiff, the St. Croix falls company had, by one of their members, delivered the lumber described in it to Isaac T. Greene, and that Greene had already removed the lumber from the falls, and had it in charge of persons hired by him, said Greene ; then, as to

such lumber, the power of said Perkins, as agent, was determined and the bill of·sale was inoperative and the jury must find for the defendant.

And the court also gave the following instructions for the plaintiff :

1. If the jury find that the bill of sale, under which the plaintiff claims, was made by Perkins, while agent of the St. Croix company, with general authority to manage the business of the company, to hire and pay laborers, and that said sale was made in good faith to pay the wages of laborers, then said sale was effectual to pass the title of the lumber to the plaintiff.

2. If Perkins was the general agent of the St. Croix company, as mentioned in plaintiff's. first instruction, he would have, as such agent, authority to transfer the lumber in trust as mentioned in the first instruction given for the defendant.

There is no legal evidence before the jury that said sale was procured by duress on the part of the laborers.

The court refused these two instructions, asked for plaintiff :

1. The written agreements between Greene and Rantoul gave no property to Greene in the lumber therein mentioned, so as to prevent a sale thereof by the company or its authorized agent.

2. If Perkins was acting as a general agent and as a lessee of the mills from May, 1847, to July, 1848, and during that time had authority to make such a transfer as that on which the plaintiff relies, no private arrangement by which Perkins' authority was limited, would affect the plaintiff, if the parties whom he represented accepted the transfer in good faith, and without any knowledge or notice of the limitation upon Perkins' authority.

Exceptions were taken to the giving and refusing of instructions.

1. We do not see why the plaintiff should not have had a verdict in this case in the court below. Upon the law of the

whole record, there can be no doubt of his right to recover, if the witnesses are to be believed. The light in which the defendant attempts to exhibit the transaction, even if supported by the testimony of his witness, Greene, would scarcely justify a verdict in his favor. But Greene's evidence may be reconciled to the view of the controversy as presented by the plaintiff. It is obvious, that Greene's agency was limited to the sale of the lumber at St. Louis, in pursuance to the stipulations of the agreement with Rantoul. It is very strange, if he regarded himself as an agent, liable to the company for the lumber, that he should recognize the right of the plaintiff by assisting him in the sale of it. If he considered his rights as hostile to those of the plaintiff, he should have asserted them, when the plaintiff came to him with his proposition to deliver the lumber if he would advance the sum of $2,800. The declaration of Greene that the lumber was delivered to him at St. Croix, must have been made under a misapprehension. The conduct of Perkins, the receipts and agreements of McPhail and Whiting, all having been to and with the plaintiff, the testimony of Greene on his cross-examination, the fact that, under the agreement, no lumber was to be regarded as delivered until the presentation of a certificate of measurement by the lumber master at St. Louis, all go to show, that there *must* have been some misconception in relation to this matter on his part.

We regard Perkins as possessed of all the powers of an owner, in managing the mill. Good faith was all that could be exacted of him. There is no pretence that he did not act in a manner conducive to the best interests of the company. The sale of lumber he made to the plaintiff, was required by the unpaid laborers employed at the mills, who, it seems, had confidence in him that he would pay them; and but for this act, there must have been a total suspension of all operations, to the great detriment of the owners.

The fourth instruction given for the defendant presented but a partial statement of the facts of the case, and was calcula-

ted to mislead the jury, by withdrawing their attention from circumstances which should have influenced their minds in forming a verdict. This is one of those cases in which, by an ingenious but partial statement of the facts in an instruction, a party may obtain a verdict, when, upon the face of the entire record, the right and justice of the matter are clearly against him. The other judges concurring, the judgment will be reversed and the cause remanded.