RICHMOND v. GREELEY.

1. **Principal and agent: BURDEN OF PROOF.** Where R. sold to G. a machine with special written warranty, conditioned, among others, that R. should be notified within thirty days if it did not work satisfactorily, and after more than that period had elapsed, R.'s agent assured plaintiff that he would overhaul the machine, and if it did not work well thereafter, his principal would pay all damages by reason of its failure, *Held:* That the burden of proof was upon G. to establish the agent's authority to vary the terms of the written contract in respect of his subsequent promise to indemnify G. for the failure of the machine.

2. ———: **INSTRUCTION.** An instruction which directed the jury that "if a party hold out another as his general agent, he is bound by the agreements of such agent in regard to the business of the agency," was *held* to be erroneous in not embodying the principle that such agreements must be within the general scope of the agent's authority.

*Appeal from Chickasaw District Court.*

FRIDAY, JUNE 19.

THIS action is brought to recover of the defendant an alleged balance due on a "Bran Duster," sold and delivered by the plaintiff to the defendant.

The defendant sets up that he purchased the machine under a printed warranty which was broken; also that plaintiff, by his agent, undertook to make said machine work well, or that he would pay all damages defendant might sustain by reason of failure; that he failed to make the machine work well, and claims damages for expenses incurred in trying to make it work well; also, because his mill had to stand idle because of the failure of the machine to do its work; and also the money which he had already paid plaintiff as part of the price of the "Duster." The cause was tried to a jury, resulting in a verdict for the defendant for $150, upon which judgment was rendered. The plaintiff appeals.

*Philo M. Knapp* and *Boulton & Duncan*, for appellant.

*A. G. Case*, for appellee.

MILLER, CH. J.—The printed warrant accompanying the machine at the time of the sale thereof to the defendant, was as follows:

"*Conditions of Warranty.*—The proprietor will deliver, in good conditions for shipping, this machine, directed to responsible parties. The parties ordering to pay all freight and expenses of putting the machine in operation, according to the directions sent with the machine. If the machine does not give satisfaction, the proprietor or his agent must be notified immediately, that he may give it his personal attention. If they fail to make it operate satisfactorily, no payment will be required, provided the machine shall be delivered to the nearest railroad depot in good order for shipping, subject to the order of the proprietor, without charge to him. If not notified within thirty days, payment will be required. I can furnish these machines on short notice. All orders will be promptly attended to. Manufactory located in the city of Lockport, on the New York Central Railroad, and having such arrangements and facilities for manufacturing, I can furnish either size of my machines on short notice, as I intend to keep all sizes constantly on hand."

This was also accompanied with printed directions as to the setting up and running the machine.

The evidence shows that defendant received the machine, set it up in his mill, and had it running prior to May 24th, 1869, at which time he wrote to plaintiff that he had just got the machine in operation, and believed it a "tip top" article, and inclosing a draft for $100, to be credited on the purchase. He had previously, in March, 1869, sent a draft of $150, to be credited thereon. There is no evidence to show that within thirty days after the defendant had put the machine in operation he notified plaintiff that it did not give satisfaction, nor is there any evidence of any dissatisfaction within that time. The defendant himself testifies that it was about the 15th of July, 1869, that he "notified plaintiff the duster would not work." The defendant did not offer to deliver the machine at the nearest, or any other, railroad depot to be shipped subject to the order of the plaintiff. Indeed there is no evidence

tending in any degree to show a breach of the conditions of the printed warranty.

II.   The defendant, however, seems to rely for a recovery more especially upon an alleged special agreement made 1. PRINCIPAL: between himself and one Hart, as the plaintiff's agent: burden of proof. agent, in which it is alleged the latter agreed to overhaul the machine, and if it did not work well thereafter, that plaintiff would pay all the damages defendant should suffer by reason of the machine not working well.   On the trial the court, against appellant's objection, permitted the defendant to testify to this alleged agreement, and this is assigned as error.   The evidence showed that Hart was the agent for the plaintiff, for the sale of machines generally.   There was no evidence tending to show that he had any authority to make the contract alleged.   As an agent authorized to sell machines which were sold with a printed warranty, such as accompanied this machine, the legal presumption would be that he was authorized to make sales upon the terms, and conditions therein contained and not otherwise.   Being authorized to sell, and the terms on which the plaintiff sold the machines being published to purchasers in a printed document, there was no presumption that the agent was empowered to go outside of those printed terms, and make a contract like the one testified to. In order, therefore, to make the plaintiff liable on such alleged contract it devolved upon the defendant to prove, or show that the agent had authority to make it, which he has entirely failed to do.   The evidence was improperly admitted.

III.   The court gave to the jury the following instruction: " If a party hold out another as his general agent he is bound 2. ——: ——: by the agreements of such agent in regard to the instruction. business of the agency."   This was erroneous. The instruction is well enough as far as it goes but it leaves out a very important element.   It is essential in order to bind the principal that the contract of the agent shall be within the scope of his authority as agent.   It is not enough that the agreement be made in regard to the business of the agency, it must be within the scope of the agency.   The contract must be within the scope of the general authority conferred

upon the agent, and not merely in regard to the business of the agency, for the agent might make a contract in regard to the business of his agency and at the same time exceed the scope of his authority. For instance, an auctioneer who is a general agent, has authority to sell goods only for ready money, unless otherwise specially authorized, and yet if he should sell on credit the transaction would be one "in regard to the business of the agency." It would nevertheless be void as to the owner of the goods unless he should see fit to ratify it. So if an attorney at law receives property in payment of a claim in his hands for collection, this would be a contract in regard to the business of the agency, but the transaction could not bind his client, for he has authority to receive cash only in payment of the claim. *McCarver v. Nealey*, 1 G. Greene, 360; Story on Agency, § 209. For the errors pointed out the judgment must be

REVERSED.