J. W. EDGERLY & COMPANY, Appellant, v. AARON COVER and CHARLES SEATON and L. W. HATTER, Administrator of the Estate of J. V. HATTER, Deceased.

A merchant's son-in-law, who managed the business as agent, and bought and paid for stock, and who, on the principal's becoming sick, was told to do the best he could, and to make collections and take notes for outstanding accounts, and apply them on a certain claim and "to work things to the best advantage and to do anything he (the agent) could to keep the business going," had no authority to execute a chattel mortgage on the stock; that not being effective to keep the business going, though the principal was too sick for consultation and the mortgage made to avoid an attachment of the stock.

*Appeal from Iowa District Court.*—HON. M. J. WADE, Judge.

THURSDAY, DECEMBER 15, 1898.

ACTION to foreclose a chattel mortgage covering a stock of goods owned by J. V. Hatter in his lifetime, alleged to have been executed February 6, 1896, by John L. Miller, as his agent. The defendant Aaron Cover has two mortgages, each covering the same stock of goods, executed by Hatter on the twenty-eighth day of February and the twenty-third day of April, 1896. The defendants Seaton and Hatter are administrators of the estate of J. V. Hatter, deceased. The sole question is whether John L. Miller had authority from J. V. Hatter to execute the mortgage to plaintiff. The district court found he had not, and dismissed the petition. The plaintiff appeals.—*Affirmed.*

*Thomas Stapleton, McNett & Tisdale,* and *W. A. Work* for appellant.

*Hedges & Rumple* for appellees.

LADD, J.—That J. V. Hatter was indebted to the plaintiff on the sixth day of February, 1896, as alleged, is not questioned. At that time he was very sick, and, because of the advice of his physician, could not be consulted. His son-in-law, John L. Miller, had been in his employment as clerk in the drug store for seven years, and for two or three years bought the goods, kept the books, made collections, paid the bills, and waited on the trade. In addition to this, during the last six months of Hatter's life, he conducted the correspondence, and made all adjustments with the wholesale houses. On the day mentioned, Miller signed Hatter's name to the mortgage sued on, covering the entire stock of drugs and other goods, by himself as agent. This was done after consulting the sons of Hatter, and under the apprehension that the agent of the plaintiff, armed with a verified petition and bond as he was, would immediately sue out a writ of attachment, and cause it to be levied on the property. The competency of Miller and his wife as witnesses, under section 4604 of the Code, is exhaustively argued by the appellant,

but, as the appellees. ignore the point, and submit the case on the theory that they might testify, we pass that question. Each party relies on the evidence of Miller, which is confirmed by that of his wife, and we set it out *in extenso*. He testified: "During the first and second weeks of his sickness, I went up to see him [Hatter] almost every day, and sometimes twice a day. Sometimes, during the first part of his sickness, something came up that I wanted to talk to him about. A claim had come in that I couldn't meet. I went to see him. I told him I didn't like to trouble him, because I knew he wasn't in a condition to be troubled about business, but if he did not feel able to talk to tell me so. He said he could talk to me a little then, and we talked a little about the claim. He told me to make some collections, to sue if I thought best, to make the customers give their notes, and turn these in, or to work things to the best advantage, and to do anything I could to keep the business going. 'Come up when you can and see me, and I will talk to you when I can; but in the meantime,' he says, 'go ahead, and do the business just as though it was your own.' He said that he knew that there were a great many debts to be paid, and things weren't in very good condition, but to go ahead, and do the best I possibly could, and that whatever I did would be all right until he got well; and he said, 'If I don't get well, it will be all right anyhow.'" It will be observed that the special duty of Miller was to "keep the business going." To this end he was given very general powers. If the execution of the mortgage was included within these, it is a valid instrument. *Richmond v. Greeley,* 38 Iowa, 666. The authority is not expressly given, and cannot be implied unless practically indispensable to the accomplishment of the object of his agency. This is the rule with respect to the making of promissory notes. *Whiting v. Stage Co.,* 20 Iowa, 557; *Miller v. House,* 67 Iowa, 737; *Paige v. Stone,* 43 Am. Dec. 420; Mechem Agency, section 389 *et seq.*; 1 Am. & Eng. Enc. Law, 1022, 1032. And it must be applied with strictness to the giving of chattel mortgages. The evidence plainly indicates the purpose of Hatter to have been that the

business continue a going concern.    This appears from his suggestions with reference to raising money.    But observation teaches that the execution of a chattel mortgage on the stock of a retail merchant is ordinarily quite as effective in putting an end to his business as the levy of a writ of attachment.    In *Dispatch Line of Packets v. Bellamy Mfg. Co.*, 12 N. H. 205, Chief Justice Parker remarked: "It is not carrying on the business of the company to pledge or mortgage the machinery used by the company, and thereby suspend its operation, or place them at the will and pleasure of a mortgagee."    In *Taylor v. Labeaume*, 17 Mo. 338, an agent, having an entire management of a business of a lumber company, the members thereof living abroad, was held to have power to transfer lumber in trust in payment of the servants of the company. Only a part of its property was so disposed of, not enough to terminate its business.    If the agent was permitted to do what the owner might have done, this must be construed with reference to carrying on his business, and not in respect to ending it.    The mortgage, if valid, transferred the right of possession to the plaintiff.    The mere fact that he did not exercise this right does not argue against the existence.    Miller had the authority to sell in the ordinary course of trade, but, authority to mortgage cannot be inferred from that to sell.    *Jeffrey v. Hursh*, 49 Mich. 31 (12 N. W. Rep. 898); *Wood v. Goodridge*, 52 Am. Dec. 771.    As the mortgage transferred the right to the possession of the goods and fixtures in the store, and placed the operation of Hatter's business beyond the control of Miller, its execution was inimical to the very purpose of his agency.    Clearly, under such circumstances, the authority to mortgage cannot be implied.    AFFIRMED.