Thomson, J.
Action by The Denver Engineering Works Company against The Gates Iron Works'. The complaint alleged that between the 26th day of November, 1896, and the 4th day of February, 1897, the plaintiff,, at the request of -the defendant, sold and delivered to the defendant certain goods, wares and merchandise of the reasonable value of $685.92, which sum the defendant promised and agreed to pay to the plaintiff. The complaint further stated that, of the indebtedness so contracted, on February 18, 1897, the defendant paid $100, and on March 27, 1897, $250; and that no part of the balance was ever paid. The answer denied all the allegations of the complaint. At the close of the evidence, the court instructed the jury that their finding should be in favor of the plaintiff for the unpaid residue of the account, with interest. They returned their verdict accordingly. A motion by the defendant for a new trial was denied; and from the judgment entered upon the verdict, the defendant prosecutes this appeal.
The evidence showed that the headquarters of the defendant, The Gates Iron Works, were in Chicago, Illinois; that B. L. Berkey was its agent in Denver ; that the property sold by the plaintiff, and with which it seeks to charge the defendant, was mining-machinery ; and that it was sold to Mr. Berkey, who bought it in the name of the defendant. It was not shown that Berkey had any actual authority from the defendant to purchase the machinery; or that the defendant derived any benefit from the purchase, or knew anything whatever about the use of its name in the transaction. So far as the record discloses, there was neither original authority nor ratification. The *17 sole ground upon which the liability is asserted is that the defendant clothed Berkey with an appearance of authority upon which the plaintiff had the right to rely. Respecting such appearance of authority, William J. Miller, the general manager of the plaintiff, testified as follows: ‘ * The sign on the office window stated: Gates Iron Works, describing the manufacturers, and underneath that, B. L. Berkey, Manager. That sign was there when the order for the goods was received. The sign stated:. Mining Machinery of all Kinds.”
The witness also stated that the defendant’s letter head showed a picture of the machine shop, the names of the officers, and the following:
“Gates’ Iron Works, Manufacturers of Gates’ Rock and Ore Breakers and General Mining Machinery, 650 Elston Ave., Chicago, 111., B. L. Berkey, Man’g’r, 422 Seventeenth St., Denver, Colo.” He testified likewise, to the defendant’s card, which, he said, contained a picture of its manufacturing establishment and machine shops, and the words and figures following:
“Gates Iron Works, Chicago, U. S. A. Mining-Machinery of Every Description. Specialties: Gates’ Rock and Ore Breakers. Steam Stamp Mills. Cyanide and Chlorination Mills. Complete Plants by Competent Engineers. 650 Elston Ave. B. L. Berkey, Manager, 422 Seventeenth St., Telephone No. 624, Denver, Colo.” On further examination, the witness, in answer to the question, “What did you say was on the window?” answered: “The firm name and manufacturers, and B. L. Berkey, Manager.” We quote from the abstract, the following additional statements of the witness:
“The Denver Engineering Works Company had no knowledge of the relations which Mr. Berkey bore to the Gates Iron Works, other than that furnished *18 by the letter heads and the sign on the office windows. Part of their sign was, manufacture of mining machinery. I think it said all kinds. I made no> inquiry with reference to the authority of Mr. Berkey, from any one. What I relied on was simply the letter head and what was painted on the office, and their business card and circular. I saw their business card on the last trial, and Mr. Berkey gave us one or two. He sent us his card and brought us his cards. He sent circulars out announcing his employment by the company and the opening of his office. I think the card was with the circular. I do not remember whether I retained the circular.”
The circular of which the witness speaks, was not in evidence; but it was, judging from the statement concerning it of the witness, something for which Berkey was responsible. It was shown that the letter head and card came from the defendant, and that the defendant knew that Berkey advertised himself as manager of its Denver office.
Discussing the question of the duty of third persons dealing with an ostensible agent, Mr. Meehem says:
“In approaching the consideration of the inquiry whether an assumed authority exists in a given case, there are certain fundamental principles which must not be lost sight of. Among these are, as has been seen, that the law indulges in no bare presumption that an agency exists; it must be proved or presumed from facts; that the agent can not establish his own authority, either by his representations or by assuming to exercise it; that an authority can not be established by mere rumor or general reputation; that even a general authority is not an unlimited one, and that every authority must find its ultimate source in some act of the principal. Persons dealing with an assumed agent, therefore, whether the ■ assumed *19 agency be a general or special one, are bound, at their peril, to ascertain not only the fact of the agency but the extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it.” — Mechem on Agency, § 276.
In Lester v. Snyder, 12 Colo. App. 351, the foregoing was expressly approved. In the case at bar, Mr. Miller, the general manager of the plaintiff, who conducted the transaction in question, in its behalf, made no inquiry with reference to the authority of Mr. Berkey; and neither himself nor his company had any knowledge of the relations existing between Berkey and the defendant, except what was shown by the letter head, sign, card and circular. It was in reliance upon these that the property was sold.
Mr. Berkey was the general agent of the defendant at Denver; he was the manager of its Denver office. The defendant was bound by the acts of Mr. Berkey within his apparent authority. Where a person holds out another to the public as having a general authority to act for him in the particular business in which he is engaged, third persons may safely deal with the agent in the transaction of such business. But there is a limit to the authority of an agent, general or special, and the principal is not bound by his act outside of such limit. No matter how extensive the authority of an agent may be in the transaction of his principal’s business, it is still confined to that business,' and his act, outside of the boundary by which the business is circumscribed, would not bind his principal.—Stewart v. Woodward, 50 Vt. 78; Bank v. R. R. Co., 13 N. Y. 599; Richmond v. Greeley, 38 Iowa 666; Fougue v. Burgess, 71 Mo. 389; Edwards v. Dooley, 120 N. Y. 540; Navigation Co. v. Dandridge, 8 Gill & Johnson 248; McAlpin v. Cassidy, 17 Tex. 450; Story on Agency, § 87.
Now, Mr. Miller knew that the defendant was en *20 gaged in the manufacture of general mining machinery. He was so advised by the letter head. The sign on the window appears to have been substantially .the same as the letter head. The card did not describe the defendant as a manufacturer, but presented a picture of its manufacturing establishment and machine shops, with the words “Mining Machinery of every Description”; and as Berkey was held out as the agent of a manufacturer, his apparent authority extended only to the sale of the goods manufactured by his principal. That the defendant allowed him to style himself its manager, is immaterial; because he could bind the defendant only in the management of the business in which it was engaged. There was nothing in the evidence of authority which Mr. Miller saw, and upon which he relied, to warrant him in assuming that Mr. Berkey had any authority to buy mining machinery. So far as appearances went— at least appearances for which the defendant was responsible — the purchase of mining machinery was no part of the defendant’s business; and there was nothing to indicate that Mr. Berkey was empowered to act outside of its business. There was no apparent authority in Berkey to buy this machinery; and in order to bind the defendant by his contract, the burden was on the plaintiff to prove that the purchase was specially authorized by it.—Mining Co. v. Fraser, 2 Colo. App. 14.
While the plaintiff,. in making the sale, relied exclusively upon the visible indicia of Berkey’s authority, at the trial it undertook to prove a custom among agencies handling mining machinery in Denver, of purchasing goods from local companies. When or how the custom originated, or how long it lasted, is not stated, except that it prevailed in Denver, in the fall and winter of 1896 and 1897. We do not think this assertion of a custom requires very *21 elaborate discussion. Respecting the effect which custom or usage may have upon the manner in which an agent may transact the business of his principal, Mr. Mechem says:
“Where the principal confers upon his agent an authority of a hind, or empowers him to transact business of a nature, in reference to which there is a well-defined and publicly known usage, it is the presumption of the law, in the absence of anything to indicate a contrary intent, that the authority was conferred in contemplation of the usage, and third persons, therefore, who deal with the agent in good faith and in the exercise of reasonable prudence, will be protected against limitations upon the usual authority, of which they had no notice. In order to give the usage this effect it must be reasonable; it must not violate positive law; and it must have existed for such a time, and become so widely and generally known, as to warrant the presumption that the principal had it in his view at the time of the appointment of the agent.”
It is only, however, the mode of transacting the business, which can be affected by usage. No man can be compelled, by custom, to alter the character of his business. Concluding the section from which we have already quoted, Mr. Mechem says further:
“Usage, however, can not operate to change the intrinsic character of the relation, nor will it be permitted as between the principal and the agent, or as between the principal and third persons having notice of them, to contravene express instructions, or to contradict an express contract to the contrary. So a usage not known to the principal, cannot operate to authorize the making of an invalid instead of a valid contract, or to bind him to take one thing when he has ordered another.”
Aside from the fact that the custom mentioned *22 in the evidence here was not defined, it had no such term of existence as to make it binding on any one; but, waiving this objection, whatever may have been its nature and limits, it could afford no protection to the plaintiff. So far as the plaintiff knew, or had any right to believe, and so far as we know, or have any right to believe, the business of the defendant was confined to the manufacture and sale of mining machinery; and no custom, in any locality, where it sent an agent to act for it, could force it to do- a different business. Presumptively, because it manufactured mining machinery, it did not desire to buy mining machinery; and no custom, however ancient or well-defined, could compel it to do so.
It seems that some time after the transaction in question, Berkey informed the defendant of his purchase as having been made on his own account, and the defendant proposed to assist him in doing an individual business, but there was no ratification. Proof was proffered by the defendant that it knew nothing of the purchases as having been made for it; that Berkey had no authority to make the purchase; and that it never, in any manner, recognized the purchase as having been made in its behalf; but the evidence was all excluded. Of course, the exclusion was error ; but it can hardly be said that it worked harm to the defendant. The burden was on the plaintiff to prove the agent’s authority and every fact which might tend to make his contract the contract of his principal; and in the absence of such proof, disproof by the defendant was unnecessary. Upon the evidence there was no question to submit to the jury; to this extent we agree with the court; but it was on the plaintiff’s side that the failure was, and the judgment should have been for the defendant.
The judgment is reversed and the cause re *23 manded for further proceedings in accordance with the views herein expressed. Reversed.