[No. 5366.]
[No. 3015 C. A.]

Schramm et al. v. Liebenberg.

1. Principal and Agent—Authority of Agent—Implied and Apparent—Borrowing Money.

Where an agent is in charge of a store as sole manager and also in charge of the ranch, cattle and horse interests of his principal, authority to borrow money for his principal does not follow therefrom, especially where it does not appear that the loan was used in the business of the principal.—P. 520.

2.  Same—Effect of Ratification of Previous Acts.

Although a principal may ratify a loan made by his agent by failing to repudiate such act, it does not follow that the person making the loan might thereby assume that the agent had general authority to borrow money for his principal, when at the time a second loan was made sufficient time had not elapsed between the loans to permit the principal to either ratify or repudiate the first loan.—P. 521.

*Appeal from the County Court of Yuma County.*
*Hon James S. Hendrie, Judge.*

Action by A. J. Liebenberg against R. Von Horrum Schramm and the Farmers' Exchange. From a judgment for plaintiff in the county court on appeal from the justice's court, defendants appeal.
*Reversed.*

Messrs. TALBOT, DENISON & WADLEY, for appellants.

Mr. ISAAC PELTON and Mr. AUGUST MUNTZING, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This action was commenced in a justice court, whence an appeal was taken to the county court, where judgment was rendered against appellant, defendant below, from which is this appeal.

It appears from the evidence introduced by appellee that the Farmers' Exchange was a country store at Yuma, Colorado, of which appellant Schramm, residing in New York City, was the owner and proprietor, and M. F. Orum, of Yuma, Colorado, sole manager. Orum was also in charge of Schramm's ranch, cattle and horse interests.

June 22, 1903, appellee loaned to the Farmers' Exchange $200.00, taking the following receipt therefor:

"Yuma, Colo., June 22, 1903.

"Received from Col. A. J. Liebenberg (appellee) two hundred dollars loan to be returned in ten days.                        •

                    "FARMERS' EXCHANGE,
                    "M. F. Orum, Manager."

June 23, appellee wrote Schramm at New York about other matters, and incidentally mentioned the fact that he had made the loan to Orum to enable him to purchase horses.   June 27, appellee testified that he made a second loan of $200.00 to the Farmers' Exchange, taking a receipt identical with the one above, except as to the date.   At the request of Orum appellee did not notify Schramm of the second loan. The first loan was repaid by crediting the account of appellee with the Farmers' Exchange in settlement of an account between appellee and the Farmers' Exchange under date August 1, 1903.   Schramm came to Yuma some time previous to September 9th, and on that date had a settlement with appellee about other matters, from which it appears that he paid to appellee the sum of $328.72.   The day following this settlement appellee demanded of Schramm payment of the sum of $200.00, basing his claim upon the receipt dated June 22nd, it appearing from the testimony of appellee and another witness, that at the time the loan of June 22nd was paid, through a mistake, the receipt dated June 27th was surrendered to Orum.

Several letters were introduced in evidence received by appellee from Schramm, written subsequent to the receipt of appellee's letter informing him of the first loan of $200.00, in none of which did Schramm deny Orum's authority to make the first loan, of which he had been informed by appellee.

It appears from the statement of account between the Farmers' Exchange and appellee, dated August 1st, in which appellee was credited with the loan of $200.00 as of date June 22nd, that a balance of $33.61 was found against appellee.

Under date September 13th, attorneys for appellee wrote a letter to Schramm, which was delivered to him personally by appellee, demanding payment of the $200.00 loaned June 27th.

These two facts have their significance.

If appellee had loaned to the Farmers' Exchange $200.00 June 27th, it would seem that he would have insisted upon receiving credit for such loan in the statement rendered between the parties August 1st, which statement showed a balance against him.

It would also seem that he would have fully explained the whole transaction to his attorneys before they wrote the letter of September 13th in which no mention was made of the loan of June 27th.

The judgment of the court below can be sustained only upon the theory that Orum, the agent, had authority, either express or implied, to make the second loan, or that the unauthorized act of the agent had been ratified by the principal.

In *Gates I. Wks. Co. v. Denver Eng. Wks. Co.,* 17 Colo. App. 17, it was said:

"Where a person holds out another to the public as having a general authority to act for him in the particular business in which he is engaged, third persons may safely deal with the agent in the transaction of such business. But there is a limit to the authority of an agent, general or special, and the principal is not bound by his act outside of such limit. No matter how extensive the authority of an agent may be in the transaction of his principal's business, it is still confined to that business, and his act, outside of

the boundary by which the business is circumscribed, would not bind his principal.'' Citing authorities.

In the light of the above authority it may be conceded, that the evidence shows that Orum was a general agent of Schramm in the conduct of the business of the Farmers' Exchange and his horse and cattle interests, but it does not follow therefrom, that he had authority to borrow money for his principal, especially when the evidence of plaintiff fails to show that the loan, which is the basis of this action, was used in the principal's business.

In *Breed v. First National Bank,* 4 Colo. 481, 505, in discussing an instruction given by the court, in which the jury in substance was told that the agent had implied power to overdraw the account of his principal to pay the men employed by him and for other necessary expenses, the court said:

''That a mining superintendent, by virtue of his employment as such, has the power to borrow money in the name of his principal, in the absence of express authority or authority which must be necessarily inferred to exist, from the course of the dealing between himself and his principal is a doctrine which we cannot sanction.''

*Perkins v. Boothby,* 71 Me. 91, was an action upon promissory notes given by an agent who had charge of the company's store, with authority to purchase such goods as he thought might be necessary, for the purchase of goods. The syllabus is:

''An agent, appointed by a company to have charge of a store, sell the goods, and from time to time make such purchases of goods as might be necessary in his judgment, subject to the general oversight of the directors, has no authority to give notes of the company in order to procure loans of money; and when notes in suit were thus given, the plaintiff cannot recover.''

*Collins v. Cook,* 65 Tex. 460, cited by counsel for appellee, is not in point, as it appears from the opinion that the agent had authority to manage the business as he thought best, and in the exercise of such judgment borrowed money necessary for the purposes of the business.

There is nothing in this record tending to show that Orum had authority to manage the business as he thought best, or had any authority whatever to borrow the money sued for, and as above stated, there was a failure to prove that the money represented by the second loan was used by Orum in the business of Schramm.

We may concede that Schramm, by his failure to repudiate the act of his agent in making the first loan, which appears to have been used in his business, ratified that act, but it does not follow that this was notice to appellee that defendant had general authority to borrow money for his principal at the time he made the second loan, five days after the first, as contended by counsel, for the reason that sufficient time had not elapsed between the first and second loans to permit of an exchange of letters between appellant and appellee, containing either a ratification or repudiation by appellant, and appellee could not have acted upon any such implied ratification at the time he made the second loan.

In view of the fact that appellee, at the request of Orum, concealed from Schramm the second loan, which in itself was an act of bad faith towards Schramm, we think he should be held strictly to the rule which imposed upon him the peril of dealing with an assumed agent, and the burden of proving the ratification of an unauthorized act by clear and explicit evidence to that effect.

Appellant knew nothing of the second loan until the day after he made a settlement with appellee

upon other matters, and when demand for payment
was made he promptly .repudiated the act of Orum,
and there is no evidence whatever in the record tend-
ing to show a ratification of the second loan.

Appellee having failed to prove a case, the court
erred in not granting the motion for a nonsuit, which
will necessitate a reversal of the judgment, and it is
so ordered.                                    *Reversed.*

Chief Justice Steele and Mr. Justice Helm
concurring.