No. 4601.

## WM. FRANZ & CO. VS. JACOB FINK AND LOUIS MOSS.

1. Delivery of an article at a fixed price under an alternative agreement that the article is to be paid for or returned at the option of the party receiving it, constitutes a sale.

2. An opion to purchase if he liked is essentially different from an option to return a purchase if he should not like. In one case the title will not pass until the optioon is determined, in the other the property passes at once, subject to the right to rescind and return.

3. A contract of this nature is a present sale subject to be defeated by a condition subsequent. Until return, therefore, the title is in the vendee. He may sell the goods as his own and thus defeat the return; or they may be seized by his creditors with like effect.

Appeal from Civil District Court, Division "D."

J. Zach Spearing, for Plaintiff and Appellant.

Chas. Rosen, for Defendant and Appellee.

MOORE, J. Alleging that on or about the 13th day of March, 1906, and again on or about the 4th day of April, 1906, it delivered to one Louis Moss "for temporary use" certain described earrings valued at the sum of $1,477.97; that it "did not sell the said earrings nor either of them to the said Moss nor  *  *  *  part with the ownership thereof in whole or in part, nor  *  *  *  authorize the said Moss to sell or dispose of the said earnings in whole or in part or either of them, nor to pledge, pawn or encumber the same in any manner, shape or form; and that, nevertheless, the said Moss "did pawn and pledge and deliver all of said earrings to Jacob Fink for a sum of money not known to petitioner, which said sum of money the said Moss used for his own benefit and the same did not in any manner enure to the benefit or advantage of petitioner," the plaintiff firm sought judgment against the said Louis Moss and the said Jacob Fink to be recognized as the "sole and only owner of all of said earrings and in *personam* against said defendants *in solido* for the said sum of $1,477.97.

The answer of Fink is a general denial coupled with the averment "that the said Louis Moss was a vendor of diamonds and jewelry in the open market of the city of New Orleans,

and was well recognized as such by the trade generally and by plaintiff and defendant; that said Moss being indebted into defendant in the sum of five hundred dollars, did in the course of his business dealings in order to make a settlement of said five hundred dollars, on or about the 28th of April, 1906, sell to defendants a certain pair of solitaire diamond earrings, for the sum of nine hundred and sixty-five dollars, represented by said debt of $500, which was thereby extinguished, and the further sum of $465.00, paid by defendant to Harry Kaitzsky, of this city, for account of said Moss; that said Moss did, in the course of his business dealings, on or about the 14th day of March, 1906, sell to defendant another pair of solitaire diamond earrings, for the price and sum of $300, which defendant paid to said Moss. And defendant denies that the earrings thus purchased and acquired by him were the property of plaintiffs, and defendant avers that he purchased the same and paid for the same in good faith and in open market, the full value thereof and purchased the same from one who was a dealer in such articles and recognized by the trade generally and by plaintiff and defendant as such, and he further avers that so far as defendant was aware, said Moss was the owner of said property and had full power, right and authority to sell the same to defendant, for which defendant paid the full value thereof in good faith and in open market; that if it be true that said Moss was not the owner of said property, and if it be true that the same was placed in his possession by the said plaintiffs, then defendant avers that the same was placed in the possession of said Moss by plaintiffs for the purpose of sale, and they are estopped to question the authority of said Moss to sell and dispose of same; and if there were any limitations on the right of said Moss to sell and dispose of the property defendant avers that he had no knowledge and no means of knowing thereof and that he should be protected in the purchase made by him as aforesaid."

Moss made no defence, and judgment by default was entered against him. There was judgment as to Fink, in his favor, dismissing the plaintiff's petition and from the judgment the plaintiff firm appeals.

## I.

It will be perceived that the basis for plaintiff's right to be

adjudged the owner of the two diamond earrings and in default of their return to have judgment for the price of said earrings against Fink—whom, it may be stated at once, is shown by the evidence to have acquired same in perfect good faith, from a regular and well-known dealer, in open market, and for a valuable consideration—is that the earrings were delivered to Moss simply for "temporary use" and absolutely without any authority conferred on him to sell, dispose of, or in any manner to encumber the same.

The testimony of the plaintiff's own witnesses establishes the very contrary.

The earrings were delivered by plaintiff to Moss—who was a dealer in diamonds, known as such to the trade generally, and to plaintiff firm particularly, as repeated transactions of a character similar to the transaction in the instant cause, were had between plaintiff and Moss—just in the same manner and for the same purposes and under the same conditions as the plaintiff delivered other jewelry to Moss on occasions prior to and subsequent to the instant transaction, and that was for the purpose of sale. From the evidence of plaintiffs' principal witness, the senior member of the firm, it is apparent that Moss not only had the right to sell these particular goods, but that he obtained them from the plaintiff firm with the knowledge on its part that this was the very purpose of the delivery. He was charged a fixed price for them, less than the retail, so that when he sold them a margin of profit could be left to him. The agreement in this and all other similar transactions between Moss and the plaintiff firm, was that the former was to have the right either to retain the goods and pay the price agreed on, or to return the goods if he so desired. In his testimony William Franz, the senior member of plaintiffs' firm, states just how this transaction occurred. We cite it as given in chief:

Q. Will you kindly tell the Court the circumstances under which you handed these things over to Mr. Moss, and for which purpose you handed them over to him?

A. Well, Mr. Moss came into the store, and he told us that he had a customer for a pair of diamond earrings, and so he took them from us for sale.

Q. Did you sell these diamond earrings to Mr. Moss?

A. No, sir; we did not sell them to him.

Q. Well, just tell us what was to be done with them; tell us the whole story with regards to that pair of diamond earrings.

A. Well, they were delivered to Mr. Moss, and he was either to sell them or return us the earrings; he was to give us back the earrings or the money.

Again he is asked:

Q. What did he (Moss) state to you?

A. He stated to us that he had a customer for a pair of earrings.

Q. And for which purpose did you give this pair of diamond earrings to Mr. Moss.

A. For the purpose of selling them.

Q. Selling them generally, or for any one particular customer?

A. Well, he said he had a particular customer for it; he said he had a customer for a pair of diamond earrings, and so we gave them to him. * * * If the earrings were sold he was going to bring me the price of them, the money, and if they were not sold, the earrings were to be returned to us."

"I charged him a margin of profit on them, on both of them. I did that because he wanted to make a profit on them, and so we thought we would make a very small margin to him."

The price agreed on was $502.97 for one pair and $975 for the other pair of the earrings. This the witness says was within 10 or 15 per cent of the cost, adding: "This is not the value at which they would have been sold at retail; they would have been sold at retail at more than that. I made a very small price to Mr. Moss at the time, because naturally he wanted to make something on it himself."

On cross-examination he says:

"Mr. Moss was an operator in diamonds, or a vendor of diamonds in this city and of jewelry; he was well known among the trade as such; we charged him (Moss) for these goods on a memorandum slip; he was either to return the goods or to give up the price which we had charged against him; we gave him a bill at the time showing the price that he was to be accountable for to us. He was not to sell the goods and charge

us a commission for selling them. He was not to account to us for what he might get out of the goods; anything that he got for the goods, no matter how much it was above the price which we billed, would belong to him."

Q. And whether he sold the goods or kept and retained them himself, all that you wanted to get back from him was the amount that you had charged him for these goods; isn't that right, Mr. Franz?

A. Yes, sir; that is correct.

He testifies that the plaintiff firm had other similar dealings with Moss.

"In these instances he had always paid us the price that we charged him for the goods." "We never inquired as to what he had done with the goods, because we had nothing to do with that—what he sold them for." From the record of the suit, No. 4594 of our docket, instituted by the plaintiff against J. W. Winehill and Louis Moss, this day decided, we hear that plaintiff firm had similar transactions with Moss on the 28th of March, 1906, and another on the 2d of April, 1906, concerning diamond studs.

The suit is for the exact price charged Moss, which is less than the actual retail value of these articles.

It is evident from the facts above recited that the transaction between plaintiff and Moss concerning the earrings in question evidences a contract of sale subject to the right to recover and return reserved to the purchaser, or what is known to the law as a contract of "sale or return."

Art. 2439 of the Civil Code defines the contract of sale as "an agreement by which one gives a thing for a price in money, and the other gives the price in order to have the thing," and also provides that, "Three things concur to the perfection of the contract, to-wit: the thing sold, the price, and the consent." Here all these elements concur. Both parties had consented to the transaction—the price was fixed and binding on both and the thing was delivered.

The only reservation, which was a condition subsequent, which was that Moss had the right of dissolving the sale by a return of the goods to be made within a reasonable delay after the transaction, no specific time being stipulated.

As we have said this was a transaction of "sale and return." Under such transactions the title passes to the vendee.

Mr. Benjamin in his work on sales, 597, says:

The bargain called sale and return was explained by the Queen's Bench in Moss vs. Sweet, 16 Q. B. 493-167. (See Swain vs. Sheppard, M. & R. 223, to mean a sale with the right on the part of the buyer to return the goods at his option, within a reasonable time and in that case it was held that the property passes and an action for goods sold and delivered will lie if the goods are not returned to the seller within a reasonable time.

In that case Lord Chief Justice James said where a party receives goods to sell them at any price he thought fit and was still only liable to pay for them at a price fixed before hand without any reference to the price at which he had sold them in a particular month he was not acting in a fiduciary capacity ' in respect to these goods.

Millish, L. J., was of the same opinion, and after stating Neville's purchase at a fixed price and at a fixed time, said:

"Now, if it had been his duty to sell to his customers at that price payable at that time, the course of dealing would have been consistent with it being merely a *del credere* agent, because I apprehend that a *del credere* agent, like any other agent, is to sell according to the instructions of his principal, and to make such contract as he is authorized to make for his principal, and he is distinguished from other agents simply in this, that he guaranteed that these persons to whom he sells shall perform the contract which he makes with them, and therefore if he sells at the price and upon the credit authorized by his principal and the customer pays according to his contract, then no doubt he is bound like other agents as soon as he receives the money to hand it over to his principal. But if the consignee is at liberty to sell at any price he likes and receive payment at any time he likes, but is to be bound if he sells the goods to pay the consignee for them at a fixed price and at a fixed time, in my opinion, whatever the parties may think, their relations are not that of principal and agent. * * * In point of law the alleged agent in such a case is making on his own account a purchase from his alleged principal and is again reselling."

Benjamin on Sales, p. 597.

Mechem on Sale, after referring to sales of goods to arrive—

—244—

to be shipped, on approval satisfactory to buyer—if satisfactory to this party—to be weighed—to be appraised, etc., in which cases, he says,. the title does not pass to the seller, reads: ·

"That to be distinguished from the cases in the last sections are those,in which the option is the opposite, *i. e.*, that the article is purchased and shall be paid for unless it be returned.

"Here is a present sale subject to a condition subsequent. As is said in one case, an option to purchase if he liked is essentially different from an option to return a purchase if he should not like. In one case the title will not pass until the option is determined; in the other, the property passes at once, subject to the right to rescind and return.

"A contract of this nature is a present sale subject to be defeated by a condition subsequent. Until return, therefore. the title is in the vendee. He may sell the goods as his own and thus defeat the return; or they may be seized by his creditors with like effect. The risk usually is his also, as the risk follows the title, excepting perhaps, such risks as were in the very nature of the property or are incident." (P. 677.)

"Delivery of an article at a fixed price under alternative agreement that the article is to be paid for or returned at the option of the party receiving it constitutes a sale." Crooker vs. Gillifer, 44 Me. 491 (69 Am. Dec. 118).

"When the option is with the party receiving, to pay for or return the goods received, the uniform current of authority is that such alternative agreement is a sale." Holbrook vs. Armstrong, 10 Me. 31.

In Dearborn vs. Turner, 16 Me. 17 (33 Am. 630), it was held that Nason, who received the property, having the alternative to return or pay, the property passed to him, and he was at liberty to sell.

In Baswell vs. Bicknall, 17 Mo. 344 (35 A. Dec. 262), the party receiving the article in dispute verbally agreed to pay a certain price or return the same in a given time. "The property," said the Court, "in the thing delivered passes and the remedy of the former owner rests in contract It is the option conceded to the party receiving which produces this effect."

## II

Even should the nature of the transaction between plaintiff

and Moss be not that of vendor and vendee, there is one fact which stands out conspicuous in the record; indeed, it is admitted by the plaintiff firm, and that is, that the goods were delivered by it to Moss for the very purpose of resale

This fact alone would, as matter of law, preclude recovery from a bona fide purchaser.

"The general rule permitting the conditional vendor as, for instance, in cases where the seller retains the title in the goods until the price is paid, to recover against a bona fide purchaser from the latter very obviously should not and does not apply in these cases in which the goods have been delivered to the conditional vendee for the very purpose of being resold." Mechem on Sales, p. 601.

"Merely entrusting goods to another without knowledge that they were to be kept on sale, would not raise an estoppel, but knowledge that they are to be put on sale and acquiescence in allowing them to be so exposed is equivalent to authority to sell them, and may well raise an equitable estoppel; that is a matter of law and a defense now favored at law and in equity." Lowenberg vs. Hays. 91 Maine 104 (64 Am. State Rep. 215).

And it has been repeatedly held that a pledgee of the person thus authorized to sell the goods may claim protection as bona fide purchaser to the extent of his lien.

Western Union, etc., Co. vs. Bank. 176 Ill.
Michigan, etc., Co. vs. Phillips, 60 Ill 190.
Prass vs. Telt, 22 N. J. Eq. 393.
Williams vs. Busch, 6 Bosn (N. Y.) 509.
Levy vs. Carr, 85 Hun. (N. Y.) 289.
Parker vs. Baxter, 19 Hun. 40.
Mechem on Sales, p. 977.

And so of any one who it in the ordinary course of business makes advances. A. & E. Ency, Vol. 24, p. 575; A. & E. Ency. Vol 8, page 840.

The case of Lallande vs. Creditor, 42 A. 705, does not militate against this proposition, for as much as the factor in that case to whom the goods were shipped was authorized to sell only as the agent and representative of the client and for the latter.

His relation to the latter was of a fiduciary nature, and

therefore the goods were not sent to him under a conditional or any character of sale at all. He was not authorized to sell the goods as his own.

In the cases cited, supra, the goods were delivered under conditional sales, with authority, however, to resell the same for the account, and as the property of the person to whom they were delivered. No fiduciary relations existed there, and none exists in the case at bar.

A leading case in which it is held that the general rule permitting the conditional vendor to recover against a bona fide purchaser from the latter does not apply where the goods have been delivered to the conditional vendor for the very purpose of being resold, is Smith vs. Clews, 105 N. Y. 283 (59 Am. Rept. 502).

The opinion in that case was delivered by Peckham, J., who subsequently became an associate Justice of the Supreme Court of the United States.

The facts in that case are on "all fours" with the facts of the instant cause. The plaintiff there had delivered to one Moss a pair of diamond earrings, which the latter said he had a customer to whom he would sell it, and for which he gave the following receipt to the plaintiff:

"New York, April 12, 1879.

"Received from Alfred H. Smith & Co., by their representative, B. W. Plumb, a pair of single stone diamond earrings, 10 1-8 karats, of the value of $1,400, on approval, to show to my customers, said knobs to be returned to said S. H. Smith & Co., on demand." (Signed) E. Miers."

Miers sold the earrings to Clews, and the plaintiff not being paid for them by Miers, sued Clews to be declared the owner of the earrings, and in default of their return for judgment for their value.

In the course of the opinion the Court said:
"Having thus become possessed of the diamonds, Miers, as has been stated, sold them to defendant, and the question is, did he get a good title as against plaintiff.
"Taking the indisputed evidence and reading this receipt in the light thereof, we cannot resist the conclusion that the plaintiff conferred upon Miers the power to sell the diamonds and of course to give a good title, and therefore

—247—

the Court should have directed a verdict for defendant.

"The plaintiffs were dealers in diamonds, and they knew Miers and that he was engaged in the business of diamond dealer—a seller of the stones to whomsoever he choose

"They had on two former occasions entrusted, through their agent, diamonds to Miers, who had sold and accounted for the proceeds of the sale without any fault being found so far as appears on account of lack of authority to sell.

"They were informed by Miers on this particular occasion that he had a customer for a pair of diamond earrings and these diamonds were then entrusted to Miers by the plaintiffs, through their agent, Plumb. Upon taking them Plumb got the receipt spoken of. Now, upon these facts, what other meaning can be attached to that receipt than that Miers had power to take these diamonds, show them to his customer, and if approved by the customer, sell them, to him?

"The fact that Miers agreed to return them to plaintiff on demand must be construed with reference to the obvious purpose for which the diamonds were entrusted to him, viz: that of a sale, and so construed, the plain meaning is that if not already sold, the plaintiff had the right to demand a return of the diamonds, and Miers would then be bound to return them. The information given to plaintiff by Miers that he, Miers, had a customer for a pair of diamond earknobs is susceptible of no other interpretation than that he had a customer who wanted to buy a pair.

"Under such circumstances, what could a dealer in diamonds mean by entrusting them to another dealer who had a customer who wanted to buy them, and who came to this dealer for the purpose of being supplied by him with the diamonds of a kind which his customer wanted to buy?

"Enlightened by these facts, the interpretation of the receipt signed by Miers is an easy matter.

"It can mean nothing else than an authority to sell the stones to the customer if they met his approval, and if not actually sold before demand made, they should be returned to the plaintiff upon demand.

"This conclusion as to what was the actual authority, given to Miers does not in the least affect the propriety of the decision cited by the counsel for the respondents, and in the

opinion of the Court at General Term, to the effect that one entrusted simply with the possession of personal property with no power to sell or pass title, cannot give title to the property even to a bona fide purchaser for value.

"The question here is simply what was the authority with which the man Miers was clothed and upon the indisputed evidence in the case we hold it was an authority to sell."

We have discussed this latter view of the case simply to show that even if the transaction between plaintiff and Moss be not regarded as a contract of sale, the plaintiff even then could not recover.

We base our decision, however. on the settled conviction that the transaction evidences a perfect sale with a condition subsequently reserved to the vendee only, to rescind the sale and return the goods, and that under such contract the title to the goods passed to Moss.

For this reason the judgment appealed from is affirmed.

March 22, 1909.

Rehearing refused April 20, 1909.

May 3, 1909. Notice of intention to apply to Supreme Court for writs.